WILLIAM TELLE v. THE LEAVENWORTH RAPID TRANSIT RAILWAY COMPANY.

1. PERSONAL INJURIES — *Action* — *Pleading and Proof.* Where a party charges, in an action for personal injuries, a specific act of negligence as a ground for damages, he is concluded thereby, and cannot recover upon other grounds of negligence not alleged.

2. ACTIONABLE NEGLIGENCE — *Evidence to Support.* Where it is alleged in a petition for personal injuries by a fireman on a motor or "dummy" of a rapid transit company, drawing two cars, that the engineer having charge of the motor or "dummy" negligently failed to discharge his duty in not keeping proper lookout for obstructions upon or near the track, it must be shown, in order to make out a case of *prima facie* actionable negligence, that the obstruction was upon or near the track for a sufficient length of time, so that the engineer, in the exercise of reasonable care, could or should have known of it

so as to have stopped the motor before reaching the obstruction. The presumption of negligence cannot be made against the master, or a coemployé, without proof tending to support it. Proof of the obstruction, just at the time of the collision with the motor or train, and the collision itself, are not sufficient to make a cause of actionable negligence against the rapid transit company in favor of the fireman on the motor or "dummy" with the engineer.

*Error from Leavenworth District Court.*

On the 13th day of November, 1887, *Wm. Telle* was a fireman on one of the engines of the *Leavenworth Rapid Transit Railway Compauy.* He was injured about 11:30 A. M. on that day, by the engine on the main track colliding with a coal car which was close to the main track on the west side thereof. This engine was the ordinary street motor, commonly known as the "dummy," and to this engine were attached two passenger cars. The crew consisted of a conductor, engineer, brakeman, and the plaintiff as fireman. The engineer's position was on the right, inside of the engine as it moved forward, and the fireman's position was on the opposite side. The railway company had a double-track street railway extending from the glucose works, in South Leavenworth, in this state, to the military reservation, in North Leavenworth. From the glucose works its trains ran south to the soldiers' home, about $2\frac{1}{2}$ miles, over a single track owned by and constituting the main track of the Kansas City, Wyandotte & Northwestern railroad. Along the main track of the Kansas City, Wyandotte & Northwestern railroad, and connecting therewith, were two side tracks belonging to that company, one east of the main track and one west and almost parallel therewith. The regular run of the train was from Delaware street, in Leavenworth, south to the soldiers' home, and such train thus passed the point where the collision occurred on each trip to the home, and again on the return trip. The train fronted to the north, and, as there was no turntable, on its trips south the engine backed. This left plaintiff at all times on the west side of the engine, or the same side that the coal car stood. On the morning in ques-

tion, the train made two round trips from Delaware street south to the home, and on these trips passed the point of collision in safety four times.  It, for the fifth time, passed the same point in making its third trip to the home, and upon the return, and in making the sixth passage by the point, the west side of the engine scraped the projecting side of the coal car on the said west side track.  The result was that the timbers which were torn out of the side of the engine caught the foot of Telle and cramped it between the timbers and coal box, and so crushed it that it had to be amputated.  About the time the engine struck the coal car, Telle had hold of the bell rope with his left hand and was in the act of getting on the seat on the box, having just put coal into the fire box. Upon the five previous trips past this point, Telle, sitting on the same side, saw the coal car on the side track within four feet of the main track.  Only 15 or 20 minutes elapsed between the passage on the fifth trip and the time of the accident.  During this very short space of time something caused the coal car to be moved nearer the main track.  On the 6th day of December, 1888, *Telle* brought his action against the *Leavenworth Rapid Transit Railway Company* to recover $20,000 as damages for his injuries, and in the petition alleged:

"That at a point on the line of the railroad over and upon which defendant was running and operating its cars between the soldier's home and the city of Leavenworth, in said Leavenworth county, there had previously to the time aforesaid been constructed a switch spur, or siding, upon which cars had been placed for the purpose of leaving the main track free and clear for the operation of its cars and engines; that said spur or siding was constructed so as to make the grade thereof incline strongly towards the main track of defendant's road; that at the time aforesaid there had been placed on the said spur or siding a coal car, which car had been carelessly and negligently left on said siding or spur, without setting the brake thereon, or locking the same, or securing the said car in any manner, so as to prevent the same from running or moving back upon the main track; that the defendant had employed and provided an engineer and con-

ductor to operate the engine upon which plaintiff was placed to work, and to take charge of its train of cars attached to said engine, whose duty it was to keep a lookout for any obstruction which might be upon the track, and to see that the track was clear; that on said day the coal car aforesaid, placed on the said spur or siding as aforesaid, by reason of the negligence and carelessness of defendant, its agents and servants, in leaving the car without the brakes being securely set thereon, or locked or secured in any manner, passed or moved down the incline of said spur or siding towards the junction of the main track, to a point of proximity to said main track which made it impossible for the train to pass on said main line with safety and without a collision with said coal car; that on said 13th day of November, 1887, while plaintiff was engaged in the discharge of his duties as fireman on said engine, the engineer in charge of said engine and the conductor in charge of said train negligently failed to keep a lookout to see if the track was clear and free from obstructions at said place, by reason of which they ran said engine into and collided with said coal car, so standing on said spur or siding, as aforesaid.

"Plaintiff avers that he was injured in consequence of the negligence of defendant, and its engineer and conductor, in not keeping a lookout so as to see that the track was clear and free from any obstructions, and not in consequence of any fault, negligence or want of care of plaintiff. Plaintiff avers that if such lookout had been made, and said engineer and conductor had been looking, as they were in duty bound to, they would have seen said coal car and could have avoided any collision with the same."

Trial at the December term for 1889, before the court, with a jury. After all the testimony of the plaintiff had been introduced, which included only that of Telle, the injured party, and of Wm. Herley, a brakeman, who was on the hind car of the train at the time Telle was injured, the court sustained a demurrer of the railway company to the evidence, and subsequently judgment was rendered against Telle for costs. He excepted, and brings the case here.

*Sherry & Hughes,* for plaintiff in error:

1. The defendant negligently permitted its main track to be obstructed by a car upon a spur or side track. Upon the

well-settled principle of law that the master should not expose his servant to unreasonable or extraordinary danger, we contend that the railway company was guilty of negligence in not keeping its track clear of obstruction. 2 Thomp. Neg. (ed. 1880), pp. 985, 986, 987. See, also, *Blanton v. Dold*, 18 S. W. Rep. (Mo.) 1149; *Mooney v. Lumber Co.*, 28 N. E. Rep. (Mass.) 352; *Donahue v. Drown*, 27 id. (Mass.) 675; *Barnouski v. Nelson*, 50 N. W. Rep. (Mich.) 989; *Byrne v. Boadle*, 2 Hurl. & C. 725; *Briggs v. Oliver*, 4 id. 407; *Griffin v. B. & A. R. Co.*, 19 N. E. Rep. 166; *Myres v. Iron Co.*, 22 id. |631; *Abel v. Canal Co.*, 28 id 663; *Dorsey v. Phillips &c. Co.*, 42 Wis. 597.

2. The engineer in charge of the locomotive negligently failed to discharge his duty, in not keeping a proper lookout for obstructions upon or near the track. The respective duties of an engineer and fireman are clearly defined by the witnesses in this case, and both of them testify that it is the duty of the engineer to look ahead and watch for obstructions upon the track.

*M. Summerfield, William C. Hook*, and *Pratt, Ferry & Hagerman*, for defendant in error:

While it is averred that there was negligence in leaving the coal car without the brakes being securely set, locked, or secured, yet there is not a syllable to the effect that such negligence was the cause of the injury, but, on the other hand, the evidence shows that the sole and direct cause of the injury is alleged to have been the negligence of the engineer and conductor in not keeping a proper lookout. It is elementary that a plaintiff, in this kind of a case, is confined to the allegations of his pleadings. *St. L. & S. F. Rld. Co. v. Fudge*, 39 Kas. 543, 546; *A. T. & S. F. Rld. Co. v. Irwin*, 35 id. 286. And if negligence in setting out the coal car did not cause the injury, it is manifestly an immaterial consideration. 1 Shearman & R. Neg. (4th ed.), §§ 5, 25.

There is absolutely no proof as to when or by whom this coal car was set out, which car was upon a side track belong-

ing to and under the control of the Kansas City, Wyandotte & Northwestern Railroad Company. If such be the fact, there is manifestly no liability on the part of this defendant, which had no control over the side track and no connection with the coal car. Supposing that the engineer owed to plaintiff the duty of keeping a lookout: does the evidence show any negligence on his part in failing to keep a proper lookout? Since the train could not have been stopped in less than 150 feet, it is manifest that if the coal car moved into the place of danger when the engine was within that distance, the engineer by no kind of a lookout could have discovered the danger in time to have avoided the injury. *Kelley v. H. & St. J. Rld. Co.*, 75 Mo. 138–141; *Moody v. Railroad Co.*, 68 id. 470, 473, 474. See, also, *A. G. S. R. Co. v. Moody*, 9 So. Rep. (Ala.) 238, 240; *U. P. Rly. Co. v. Shannon*, 33 Kas. 446; *Murray v. Railroad Co.*, 10 Rich. Law (S. C.), 227, 232; *Hyer v. Chamberlain*, 46 Fed. Rep. (S. C.) 341, 342; *Nashville &c. Rld. Co. v. Hembree* (Ala.), 38 Am. & Eng. Rld. Cases, 300; *Toner v. C. M. & St. P. Rly. Co.*, 69 Wis. 188, 192.

Even if the law absolutely presumed negligence when a fireman, whose duty it was to look out, was injured by a collision with an obstruction on the track, the rule would have no application when a plaintiff singled out a specific act of negligence, charged it in his petition, and relied upon it at the trial. See *Denton v. C. R. I. & P. Rld. Co.*, 52 Iowa, 161; *Carter v. K. C. St. J. & C. B. Rld. Co.*, 65 id. 287; *Price v. St. L. &c. Rld. Co.*, 72 Mo. 414, 416, 417; *Mayor v. Humphries*, 1 Car. & R. 251; *A. T. & S. F. Rld. Co. v. Irwin*, 35 Kas. 286.

It is not necessary to consider whether, had the side track been in defendant's charge, the coal car set out by defendant, and the collision occurred, without the breakage of any appliances, there would have arisen an inference of negligence. See *U. P. Rly. Co. v. Milliken*, 8 Kas. 647; *U. P. Rly. Co. v. Young*, 8 id. 658, 660; *Jackson v. K. C. L. & S. K. Rly. Co.*, 31 id. 761, 764; *Mo. Pac. Rly. Co. v. Haley*, 25 id. 35, 56; *A. T. & S. F. Rld. Co. v. Wagner*, 33 id. 660; *A. T. & S. F.*

*Rld. Co. v. Ledbetter*, 34 id. 326, 332, 334; *Murray v. Railroad Co.*, 11 Colo. 124; *Railroad Co. v. Allen*, 78 Ala. 494; *DeGraff v. Railroad Co.*, 76 N. Y. 125, 129, 130, 131; *Kennedy v. Railroad Co.*, 43 Mo. App. 1; *Dewald v. K. C. F. S. & G. Rld. Co.*, 44 Kas. 586; *Williams v. K. C. S. & M. Rld. Co.*, 96 Mo. 275.

The opinion of the court was delivered by

HORTON, C. J.: The question in this case is, whether the plaintiff upon his proof was entitled to go to the jury upon the question of the defendant's negligence. It is contended that the railway company was guilty of negligence in not keeping its track clear of obstructions, and that the engineer in charge of the street motor or "dummy" negligently failed to discharge his duty in not keeping a proper lookout for obstructions upon or near the track. It has been frequently decided by this court that a railway company is bound to exercise reasonable and ordinary care in providing suitable machinery, instruments, means and appliances for the work of its servants and employés. (*Railroad Co. v. Holt*, 29 Kas. 149; *Railroad Co. v. Fox*, 31 id. 586; *Railroad Co. v. Moore*, 31 id. 197; *Railroad Co. v. Wagner*, 33 id. 660; *Railway Co. v. Weaver*, 35 id. 412; *Railway Co. v. Dwyer*, 36 id. 58.) If the accident in this case had resulted from a coal car owned or operated by the defendant, or from any defect in the construction or maintenance of the track upon which its trains were operated, and if the petition had charged that the railway company had failed to exercise reasonable care and diligence to provide Telle, the injured employé, with a reasonably safe track or place at which to work, it is probable that sufficient proof was offered to establish *prima facie* actionable negligence. (2 Thomp. Neg. [ed. 1880], 985–987; *Blanton v. Dold*, 18 S. W. [Mo. 1892] 1149; *Mooney v. Lumber Co.*, 28 N. E. Rep. [Mass. 1891] 352; *Donahue v. Drown*, 27 id. [Mass. 1891] 675; *Griffin v. B. & A. R. Co.*, 19 id. 166; *Kelley v. Bridge Works*, 17 Kas. 558; *Jackson v. Railroad Co.*, 31 id.

761; *Railroad Co. v. Ledbetter*, 34 id. 334.)    But this is not the case which is before us for consideration.

The allegation in the petition that the coal car on the spur or siding "moved towards the junction of the main track on account of the negligence and carelessness of the defendant, its agents or servants, in leaving the car without the brakes being securely set or secured," was not sustained by any proof whatever.    On the other hand, it affirmatively appeared that the motor or " dummy," with two cars attached, ran from the glucose works south to the soldiers' home, about $2\frac{1}{2}$ miles, over a single track owned by the Kansas City, Wyandotte, and Northwestern Railroad Company ; that the spur or siding upon which the coal car was standing which collided with the motor or "dummy" was not owned or under the control or charge of the defendant.    It was not placed upon the spur or siding by the defendant, and neither the defendant nor any of its agents or servants had anything to do with the side tracks or the location of the coal car.    The petition specifically alleged that —

"The engineer in charge of the engine, and the conductor in charge of the train, negligently failed to keep a lookout to see if the track was clear and free from obstructions at said place, by reason of which they ran the engine into and collided with the coal car so standing on the spur or siding; that plaintiff was injured in consequence of the negligence of defendant and its engineer and conductor, in not keeping a lookout so as to see that the track was clear and free from obstructions; that if such lookout had been made, and the engineer and conductor had been looking out, as they were in duty bound to do, they would have seen the coal car, and could have avoided any collision with the same."

The proof showed that the coal car stood upon a parallel side track, about four feet from the main track, for quite a long time.    Five times the train upon which Telle was the fireman passed this coal car in safety, Telle sitting on the same side of the "dummy" or engine.    The coal car was seen

in the same position 15 or 20 minutes prior to the accident. When the "dummy" and train were about to pass the coal car for the sixth time, from some cause not explained, it had moved a few feet upon the spur or siding, so that it struck the "dummy," and injured Telle. The proof showed that the engineer could have stopped the train within 150 feet of the point of collision, but there was no proof offered showing or tending to show that the coal car had reached the point at which the collision took place when the "dummy" and train were 150 feet or more distant. For aught that appears, the coal car may have moved down to the danger point after the train was less than 150 feet from it. Herley, the brakeman, who was standing on the rear step of the train on the west side, being the same side that the coal car stood on, testified as follows:

"Ques. Where were you situated just before this collision? Ans. I was on the hind end of the two cars.

"Q. What did you observe, and what did you do? A. Well, about the time the engine struck the car I was down on the steps of the car, and I looked ahead to see how the switch was, and I saw they were going to strike, and jumped off.

"Q. You were on the hind coach, were you? A. Yes, sir.

"Q. And you could see from the platform at the end of the coach that the engine was going to strike the coal car? A. Yes, sir.

"Q. And then you jumped? A. Yes, sir.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. Now, as I understand your statement, Mr. Herley, it is this: That just at the time the cars were about to strike, just at that instant you happened to glance out and thought there was not room to pass, and you jumped off? A. Yes, sir.

"Q. From the time you saw it, did you not have time to do anything else? A. That is all I had; I was down on the last step, and I had to get off.

"Q. Did you know how fast the car was running? A. The train we were on?

"Q. Yes. A. Well, I suppose from 12 to 15 miles an hour; I do n't know exactly how fast we were running.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. By looking, could you tell about how far back it would strike? A. No, sir; I could n't; the engine struck it just before I got off."

Telle testified that the engineer "could have stopped the train within 150 feet." The presumption is that the master has discharged his duty to the employé. (*Railway Co. v. Milliken*, 8 Kas. 647; *Railway Co. v. Young*, 8 id. 658; *Railway Co. v. Salmon*, 11 id. 83; *Jackson v. Railroad Co.*, 31 id. 761; Wood, Mast. & Serv. 368–382.) The petition charged negligence upon the engineer and conductor. They were not negligent unless they saw or could have seen the coal car in time

2. Actionable negligence— evidence to support.

to have stopped the train before the collision; therefore, unless proof was offered that the coal car was standing at the point of collision, or could have been seen moving towards that point, within 150 feet therefrom, there would be no negligence in not stopping the train. This case, upon the pleadings and evidence, is very much as if a tree or a rock had suddenly fallen upon or near the track just before the train reached the place of accident. Negligence in such a case could hardly be predicated upon the mere fact that an obstruction was upon the track undiscovered. The proof should go farther, and show, not only that the obstruction was upon the track at the time of the collision, but also upon or near the track long enough for the engineer to have seen the same and stopped the train. There was no proof when that coal car reached that dangerous position. As it was 15 or 20 minutes before in a safe position, it is as consistent to say that it moved to the place of danger just before the collision as to say that it moved there several minutes prior. Since the train could not have been stopped in less than 150 feet, it is manifest that if the coal car moved into the place of danger when the engine was within that distance, the engineer by no kind of a lookout could have discovered the danger in time to have avoided the injury. If in fact the coal car moved so slowly down that it could have been seen by the engineer within 150 feet before reaching the point of collision, that should have been shown. As crowds

of people lined the track watching the movements of the train, it being the first day of its operation on the road, there ought to have been no trouble in showing by some witness when the coal car reached the danger point, or whether it moved slowly down, and therefore could or ought to have been seen by the engineer in time to have prevented the collision. (*Kelley v. Railroad Co.*, 75 Mo. 138; *Moody v. Railroad Co.*, 68 id. 470; *Toner v. Railway Co.*, 69 Wis. 188; *Murray v. Railroad Co.*, 11 Colo. 124; *Carter v. Railway Co.*, 65 Iowa, 287; *Railway Co. v. Haley*, 25 Kas. 35.)

Of course, where a party charges a specific act of negligence, he is concluded thereby and cannot recover upon matters not alleged. (*Railroad Co. v. Irwin*, 35 Kas. 286; *Denton v. Railroad Co.*, 52 Iowa, 161; *Carter v. Railway Co.*, supra; *Price v. Railway Co.*, 72 Mo. 414.)

1. Personal injuries—action—pleading and proof.

The judgment of the district court will be affirmed.

All the Justices concurring.