ROSA LEE TYLER *v.* HEN WISE AND KATE MILTON, DOING BUSINESS AS THE WISE & MILTON MUSICAL COMEDY AND VAUDEVILLE COMPANY, DEFENDANTS, HONOLULU AMUSEMENT COMPANY, LIMITED, AN HAWAIIAN CORPORATION, GARNISHEE.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED MAY 22, 1912.                    DECIDED MAY 31, 1912.

ROBERTSON, C. J., PERRY AND DE BOLT, JJ.

CONTRACTS—*evidence of modification.*

Where the undisputed evidence shows that W. employed T. in Chicago to perform as a singer in Honolulu for a period of twelve weeks at a stated salary, without any condition as to the theater or theaters in Honolulu at which T. was to appear, evidence that during a conversation between the parties in San Francisco, while T. was on her way to Honolulu under the contract, W. informed T. that she would appear at a theater operated by the H. A. Co. does not in itself justify a finding that the contract was thereby modified by the addition of a provision that T.'s performance would be at the theater so named.

EVIDENCE—*mere scintilla.*

A mere scintilla of evidence is insufficient to support a finding of fact.

Certain findings in this case held to be unsupported by evidence.

OPINION OF THE COURT BY PERRY, J.

This is an action of assumpsit for $299 upon a contract to employ the plaintiff as singer in Honolulu for twelve weeks at a salary of $35 per week, the main allegation being in brief that after the plaintiff had performed her part of the contract for a period of one week the defendants refused to permit her to complete the performance although she was ready and willing at all times to sing as required by the terms of her contract and offered to do so.

The following statement of facts is based upon undisputed evidence adduced at the trial. While at the office of one F.

Doyle in Chicago the plaintiff on or about November 7, 1911, received a letter addressed to her by Doyle and reading as follows: "If you will communicate with Hen Wise, c/o Mrs. Weston, West Bank Bldg., San Francisco, Cal. immediately you will be able to arrange an indefinite engagement in Honolulu with him. I would suggest you wire him immediately." The plaintiff communicated by telegraph with the defendants inquiring concerning the terms of the offer and received from the defendants the following telegram: "Telegram recd sent you letter care Doyles. Kindly answer if the terms are ok, we furnish transportation to Honolulu and return give twelve weeks or longer all particulars are in letter. We sail Dec. twentieth answer letter as soon as received don't delay and will forward contracts." .The letter referred to in this telegram was not received by plaintiff. On November 27 defendant Wise telegraphed to plaintiff from Fresno, California: "Everything is ok for you to join Co. I sent letter to Doyle's office I will forward transportation not later than twelfth Dec. for you to come to Frisco. There will be a letter at fosters Music store for you by Weds. or Thurs. Wire answer immediately." On December 1 the plaintiff telegraphed to the defendant Wise, "How is expenses over there am willing to go if I can make any thing if can break the jump that will help lots fix it for Dec if you can if not send ticket at once and I can make week there before going." The letter mentioned in the telegram of November 27 and dated at Fresno November 26, was received by the plaintiff and read as follows: "I sent a letter c/o Doyle for you over two weeks ago but did not get any reply. Now I would like to book you for Honolulu for our Co. for 12 weeks or more, but can not pay a big salary. I can pay you $35 00/100 per week and transportation to and from Honolulu. Will advance you ticket from Chicago to Frisco you can pay it back at $10 00 a week—and if you go to Australia with us I raise you to $50 00 and transportation. 6 months in Australia then back to Manila and Honolulu

again—practically 12 months work before you get back to America if you care to go.  Now if you will accept terms I will have Bobby Price to come out on same train as he is going with me.  Kindly let me hear by wire.  I may fix Denver a week at $40 00 for you to break the jump  *  *  *  by the way Bobby Price lives at 2823 La Salle.  So let him know if you can come.  You will have his ticket in charge."  Upon receipt of the letter of November 26 the plaintiff telegraphed her acceptance of the terms offered and after receiving from the defendants a railroad ticket to San Francisco proceeded to the latter city arriving there on or about December 18.  In San Francisco she was furnished by the defendants transportation to Honolulu and sailed on the day following that of her arrival from the east, reaching Honolulu on December 26.  Defendant Milton and one other of the defendants' musical comedy company came to Honolulu on the same steamer with the plaintiff.  The defendant Wise and the remaining members of the company arrived in Honolulu a few days later, and from the fifteenth to the nineteenth of January, 1912, inclusive, the plaintiff sang under her contract at a theater operated by the Honolulu Amusement Company in Honolulu.  The Honolulu Amusement Company refused to permit the plaintiff to sing after January 19 and the remainder of the company after January 20, subsequently re-engaging some of the members of the company under a new arrangement.  The defendants refused and failed to furnish to the plaintiff further employment as a singer after January 19 or to pay a part of the salary provided for by the contract although plaintiff was willing and offered to perform her part of the contract to its completion.

There was also evidence tending to show the precise amount claimed to be due the plaintiff as salary and the efforts made by her to secure other employment after January 19.

The trial court (without a jury) found that "the contract had for its consummation an engagement with the Honolulu

Amusement Co. in Honolulu" and that "there was an implied understanding that the company formed by the defendants, of which the plaintiff was one, was to play for the Honolulu Amusement Co.; and that any termination of the engagement by the company was to terminate the contract between plaintiff and defendant" and gave judgment for the defendants. The sole question under the exceptions is whether there was sufficient evidence to support these findings and the judgment.

The undisputed evidence requires a finding that a contract, complete, in its terms, was entered into between the parties by telegraph and letter while the plaintiff was in Chicago and that the plaintiff undertook her railroad journey westward in partial fulfilment of that contract. The minds of the parties had met before the plaintiff left Chicago and as to the terms of that agreement there could be but one finding and that was that the defendants were to furnish the plaintiff employment as a singer in Honolulu for a period of at least twelve weeks at a salary of $35 per week and were to furnish her transportation from San Francisco to Honolulu and return and advance to her the cost of transportation from Chicago to San Francisco, the latter amount to be repaid by her in weekly instalments of $10 each. These terms were clear and unambiguous and constituted an absolute undertaking on the defendants' part to give the plaintiff employment in Honolulu for the period stated without any condition as to the theaters or places in Honolulu in which the plaintiff was to appear. The plaintiff did, indeed, testify, answering a question as to why she had come to Honolulu, "Because I got a message from Mr. Wise through Mr. Frank Doyle saying if I would let him hear from me at once he would give me an engagement in Honolulu for the Honolulu Amusement Co. or with them", but this evidence cannot support the findings excepted to. If the witness was attempting to state in this answer the contents of the note from Doyle the note itself conclusively shows that her memory was at fault in this respect. There is no mention of the Honolulu Amusement

Company in the note or in the remainder of the correspondence. If, on the other hand, the testimony just quoted be regarded as sufficient to justify a finding that Doyle orally informed the plaintiff that the singing was to be for the Honolulu Amusement Company, nevertheless the finding could not be supported that Doyle's statement thereby became one of the terms of the contract for the evidence does not permit of a finding that Doyle was the agent of the defendants. His only part in the matter was to assist the defendants in getting into communication with the plaintiff. The only other testimony which can be claimed to support the findings made is the following from the direct examination of the defendant Wise: "Now, did you meet Madam Tyler in San Francisco?" "I did sir." "Did you have any conversation with her there about coming to Honolulu?" "I did sir." "What is the arrangement under which she was to come to Honolulu?" "Madam was to come down here for $35 a week, her transportation from San Francisco to Honolulu and return, and twelve weeks; as my contract called for from eight to twelve weeks I gave madam the entire amount that my contract would call. The whole, entire amount, mind, would be twelve weeks, if I finished out with the Honolulu Amusement Company and I gave her twelve weeks or more; as the letter stated I was in communication with Australia and intending to go there as I always do every year." "Did you tell her where you were to play?" "I told her we were to play for the Honolulu Amusement Co. We both understood that, madam and I." "Did you say what theater, do you know?" "No I didn't say. I don't think I did although I had a letter from the then manager." This testimony would certainly permit the finding that the plaintiff knew before leaving San Francisco that the performances were to be for the Honolulu Amusement Company, but not the finding that the information so communicated to her was thereby made one of the terms of the contract. There was no suggestion by the witness that the parties understood in San Francisco that the terms of the agree-

ment originally arrived at were being modified. The plaintiff would naturally have inferred that her appearances would be at some theater but that did not render the defendants' undertaking any the less absolute. We do not understand the defendants' testimony just quoted to be to the effect that the plaintiff understood in San Francisco that her employment for as long a period as twelve weeks would depend upon the success of the defendants in themselves obtaining employment with the Honolulu Amusement Company for that period of time. The qualification "if I finished out with the Honolulu Amusement Company" would seem to have been intended by the witness to refer to the defendants' contract with the Honolulu Amusement Company and not to the plaintiff's contract with the defendants. Assuming, however, that it was within the power of the trial court to construe the qualification as having been intended to refer to the plaintiff's contract with the defendants it is at best a mere scintilla of evidence and not sufficient to support a finding that the contract as originally entered into was modified to that extent in San Francisco. It is at best the mere statement of the defendant's conclusion as to what the contract was. The witness did not attempt to testify that he informed her in San Francisco or that she understood that her employment for twelve weeks was dependent upon the continuance of the defendants' contract with the amusement company for the same period or that they would be released from his obligation to pay her the agreed salary of $35 upon the termination of his engagement by the amusement company. The terms of the original contract having been so clearly shown by undisputed evidence a finding of a modification of those terms cannot be based upon such evidence as that relied upon.

The defendants invoke the doctrine that in contracts in which the performance depends on the continued existence of a specified person or thing a condition is implied that impossibility of performance arising from the perishing or destruction of the

person of thing shall excuse the performance, but there is no room in this case for the application of that rule. The defend· ants' undertaking was absolute to furnish the employment for the period stated and performance was not to depend upon the continued existence of a contract between the defendants and the amusement company or the permission of the amusement company that the plaintiff perform. It was immaterial to the plaintiff under the terms of the contract at what particular theater or theaters in Honolulu she was to appear and she obligated herself to appear at whatever place or places they should reasonably request her to sing. The evidence adduced required the finding that the defendants before entering into the contract knew what degree of ability as a singer the plaintiff possessed and that although in their opinion the quality of her singing had appreciably deteriorated in recent years it nevertheless was satisfactory to them. The testimony of defendant Wise was that he was "perfectly satisfied" and "wanted her to continue." The quality of music that she contracted to furnish to defendants she did furnish for one week and was able and willing to furnish for eleven weeks additional. If it was not such as to please Honolulu audiences the error of judgment was that of the defendants and for that they and not the plaintiff must suffer. If there was no such error of judgment the duty was the defendants' to find a place or places at which the plaintiff was to appear and perform her undertaking.

The exceptions are sustained and a new trial is granted.

*W. B. Lymer* (*Thompson, Wilder, Watson & Lymer* on the brief) for plaintiff.

*J. A. Magoon* (*N. W. Aluli* with him on the brief) for defendants.