ETHEL A. ROSS *v.* THE PREFERRED ACCIDENT
INSURANCE COMPANY OF NEW YORK.

No. 1548.

ERROR TO CIRCUIT COURT FIRST CIRCUIT.
HON. R. J. O'BRIEN, JUDGE.

SUBMITTED FEBRUARY 6, 1925.                    DECIDED MAY 14, 1925.

PETERS, C. J., PERRY AND LINDSAY, JJ.

ACCIDENT INSURANCE—*pleadings*—*proof confined to allegation.*

> In an action on an accident insurance policy the allegation was
> that the cause of the death of the insured was the accidental
> overturning of an automobile in which he was riding. No evi-
> dence was adduced at the trial from which the jury could prop-
> erly find that there was an overturning of or any other accident
> to the automobile. *Held,* that the statement in the declaration
> that the accident consisted of an overturning of the machine was
> not surplusage; that the proof was confined to the allegation as
> to the nature of the accident; and that the verdict could not be
> sustained on the theory that an accident occurred other than that
> alleged.

OPINION OF THE COURT BY PERRY, J.
(Peters, C. J., dissenting.)

This is an action brought by the beneficiary named in
an accident insurance policy for the amount of the insur-
ance. The plaintiff, who was the widow of the insured,
set forth in her declaration the corporate capacity of the
defendant insurance company, its lawful authority to
carry on in this Territory the business of accident insur-
ance and the issuance on December 15, 1906, by the
defendant of a policy insuring her husband with relation
to accidents in the sum of $7500, if he should continue
to pay the premiums mentioned in the policy for six
years after its date; and further set forth that her hus-
band died on September 27, 1921; that all the premiums

payable under the policy were duly paid by him during his lifetime; that at the time of his death the policy was in full force and effect and that her husband in his lifetime and the plaintiff after his death had each duly performed all of the conditions of the policy on their part to be kept and performed, with the exception of certain terms relating to notice and proof of death which, as the plaintiff claimed, had been waived by the defendant. She also alleged that it was the provision of the policy that the amount of insurance named therein was to be paid by the defendant "in the event of death" (of the insured) "resulting directly, independently and exclusively of any and all other cause or causes from bodily injury effected solely through external, violent and accidental means;" "that on or about the 21st day of September, 1921, and while said policy was in full force and effect, said Harvey L. Ross" (the insured) "received a bodily injury solely through external, violent and accidental means; to-wit: bruises and contusions caused by the accidental overturning of an automobile driven by the said Harvey L. Ross, which said injury caused the death of the said Harvey L. Ross within ninety days thereafter; to-wit, on the 27th day of September, 1921; and that his said death resulted directly from said accident, independently and exclusively of all other causes." There is no other allegation in the declaration concerning the nature of the accident which is claimed to have caused the death of the insured.

The defendant filed a motion for a bill of particulars asking that the plaintiff be required to designate (1) "the date and time of day of the accident alleged to have taken place as set forth in said complaint" and (2) "the place where said alleged accident took place," and this motion was granted to the extent of requiring the plaintiff to "furnish to the defendant a bill of particulars

setting forth with particularity the place where the alleged accident took place set forth and described in plaintiff's complaint." In the plaintiff's bill of particulars filed in compliance with this order it was alleged "that said accident more fully described and set forth in plaintiff's bill of complaint herein, took place and happened on the Island of Oahu, Territory of Hawaii, and while plaintiff's decedent was driving said automobile from Honolulu to Kahuku, and said accident happened in the district of Koolaupoko on said Island of Oahu as aforesaid." Thereafter the defendant filed an answer in which it denied "the truth of each and every allegation therein contained." The cause was tried before a jury which rendered a verdict in favor of the plaintiff in the sum of $7500 and judgment was entered accordingly. An exception was noted to the verdict, at the time of its rendition, on the ground that "it is contrary to the law, contrary to the evidence and contrary to the weight of the evidence" and notice was given of a motion for a new trial, which motion was later presented. The case comes to this court upon a writ of error.

There are nineteen assignments of error, some relating to rulings on evidence, some to the denial of a motion for a directed verdict, one to the refusal of an instruction requested by the defendant "that there is no evidence of an accident to insured as alleged in plaintiff's complaint and bill of particulars," others to other rulings upon instructions given and requested and others to the correctness of the verdict and the judgment.

One of the questions presented by these assignments is whether evidence was adduced which was sufficient as a matter of law to support a finding by the jury that there was an overturning of the automobile in which the insured was riding.

It is undoubtedly the law that the jury is the sole

judge of the facts and that this court cannot on exceptions or error pass upon the credibility of the witnesses or the weight of the evidence; but it is equally well settled in this jurisdiction that it is a question of law, within the province of this court to decide, whether there was before the jury in any given case evidence which was legally sufficient to support the verdict or to justify any particular finding of fact, that a mere scintilla of evidence is not sufficient to support a verdict and that there must be some substantial evidence in order to justify this court in sustaining a verdict or finding. "Judges are no longer required to submit a case to the jury merely because some evidence has been introduced by the party .having the burden of proof, unless the evidence be of such a character that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence. Decided cases may be found where it is held that if there is a scintilla of evidence in support of a case, the judge is bound to leave it to the jury; but the modern decisions have established a more reasonable rule, to wit, that before the evidence is left to the jury, there is or may be in every case a preliminary question for the judge, not whether there is ·literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." *Commissioners* v. *Clark,* 94 U. S. 278, 284, quoted with approval in *Kamalu* v. *Lovell,* 5 Haw. 62, 64 (1883). "The evidence relied upon by the plaintiff in this matter is, in our opinion, so very slight and so very unsatisfactory that it is insufficient to sustain the verdict. The evidence of adverse possession, on the other hand, is strong and convincing. In so holding we are not unmindful of the rule, repeatedly laid down in former cases, that a verdict

cannot be set aside where there is sufficient evidence to sustain it, but a mere scintilla of evidence is not sufficient for that purpose." *Smith* v. *Hamakua Mill Co.,* 14 Haw. 669, 677 (1903), the court again quoting with approval from *Commissioners* v. *Clark,* 94 U. S. 278. "To amount to more than a mere scintilla the evidence must be of a character sufficiently substantial, in view of all the circumstances of the case, to warrant the jury, as triers of the facts, in finding from it the fact to establish which the evidence was introduced." *Holstein* v. *Benedict,* 22 Haw. 441, 445 (1915). To the same effect are *Wo Sing & Co.* v. *Kwong Chong Wai Co.,* 16 Haw. 17, 21 (1904); *Richards* v. *Ontai,* 19 Haw. 451, 458 (1909); *Robinson* v. *H. R. T. & L. Co.,* 20 Haw. 426, 432; 467 (1911); *Tyler* v. *Wise,* 21 Haw. 148, 153 (1912); *Scott* v. *Hawaiian Tobacco Plantation,* 21 Haw. 493, 497 (1913).

In the case at bar there was evidence tending to establish the defense that, while on or about September 21, 1921, the date named in the declaration, the insured drove in his automobile from Honolulu to Kahuku through the district of Koolaupoko, no overturning of the machine or other accident with the' automobile occurred and also evidence tending to show that, immediately prior to the automobile trip in question, the insured was ill and complained of having the pleurisy and took medicine therefor; but upon this inquiry that evidence must be wholly disregarded. For present purposes regard must be had solely to the evidence, and to all of the evidence, which tended to show that the automobile was overturned. The following is a statement of the evidence admitted at the trial and favorable to the plaintiff's claim:

The insured was a physician, practising at the time in the district of Kahuku, at the northwestern end of

this island, and perhaps in neighboring districts. Several witnesses, including relatives of his, a physician and others, testified that they saw the insured on the day next preceding the date of the alleged automobile accident and that, aside from the ordinary effects of the extraction of a tooth, he appeared to be in good health and also that he had no cough. A Japanese nurse employed at a hospital at Kahuku testified that, on or about September 19 or 20, Dr. Ross arrived at the hospital at Kahuku about 3 p. m. in his automobile upon his return from Honolulu and that he had started for Honolulu in his automobile the day before; that at about 8 p. m. of the day of his return to Kahuku Dr. Ross called him to his home saying that he was in trouble; that upon the witness' arrival at the doctor's home the latter asked him to heat some medicine and put it on his right arm; that the right arm was "purplish and red;" that the right side of his chest was "reddish color" in an area of about ten inches by six inches; that the doctor said that his "foot was bad, but we didn't put any medicine on it;" that "he walked as though he was in pain;" that "when I moved his arm he said it was in pain;" that, "I stayed with him about three hours that night;" that "I heated and applied the medicine and changed it during that three hours;" that his face was "unnatural and sickly in appearance;" that, when he returned in the auto about 3 p. m. that day the auto "was dirty, a great deal of dirt about it, red dirt, it looked as though it had been used and that there had been dirt and dust come on it;" that the witness "next saw him after noon of the next day" and that the doctor was then still in bed; that the second day "I put on no more liniments or lotions;" that the second day "his face looked worse and flushed but I cannot say whether he had a fever then;" that the second day the doctor "could

not move his body freely and the color of his face, his general appearance was of a sick person;" that the second day and thereafter the doctor "coughed and spit blood;" that the witness did not see the doctor's body the second day; that on Friday (the doctor's return from Honolulu having been either on the Monday or the Wednesday preceding, according to the witness) "he coughed and spit blood, he was bluish black on the right arm and right chest and his breathing was fast;" that on Friday "his back was red but I think that was because he was lying on it;" that he "coughed blood" every day; that on Friday the doctor "had the face of a sick person, bloodless in color and white;" that on Friday the witness saw him "shivering and shaking" as though he was having a chill; that the last time the doctor came into town (meaning, it may be assumed, the day before the date of the alleged accident) "he said that the road by the pali was bad but irrespective of that he liked to come that way;" that "when I changed the bedclothes he said it hurts," the witness indicating the right arm and right chest; that on the night when the doctor first called the witness to help him the witness "saw his navy blue coat and pants in a heap on the floor as though he had kicked them off" and that the witness "paid no particular attention to their condition, other than the dirt;" that these clothes "were dirty with dirt;" that "the last time he went to town he had those same clothes on;" that when the doctor started for Waialua (meaning when later he was taken there by Dr. Wood) "the color of his body was very bad, his body looked impoverished and discolored on his arm and side" and that "he was hardly able to walk to the machine."

Dr. Wood, practising physician of Waialua, about fifteen miles distant from Kahuku, was called to attend Dr. Ross on the Wednesday preceding his death. He

testified that he found the patient "ill in bed, suffering considerable pain, at that time suffering from pleurisy with a slight lung involvement; that there were a number of bruises and contusions over his chest and arms; that they were not particularly deep," "they were bruises though which showed the usual characteristics of tenderness, swelling, discoloration, black and blue;" that, other than the chest, "the rest of his body was practically free from deep bruises, there were marks of contusions but I did not regard them as particularly serious at that time;" that there was "temperature, pain, accentuated on breathing, the condition generally known as acute pleurisy;" that he did not see the patient again for three days when on Sunday afternoon he "received a hurry-up call," telephoned for another surgeon and with him called on Dr. Ross; that the patient at that time was "a very sick man, not clear in his statements, and temperature very high;" that at that time "the discoloration was much more marked and his legs, his back and his arms were bruised." Dr. Wood took the insured to his house at Waialua on that Sunday and on the next day secured a trained attendant to help care for him; there were some slight symptoms of the "kidneys not doing their work properly." On the following Wednesday morning the insured died. Dr. Wood's testimony was that the immediate cause of death was pneumonia.

The undertaker who attended to the final disposition of the remains of the insured testified that the chest was "kind of dark, kind of blue, also one side of his body, near right arm and his right leg;" that "it was fading to kind of yellowish;" that the body when brought in was clothed in a blue suit; that the suit "was soiled on the right side a little; the arm, I think, was torn by the elbow here and the right leg was a little bit torn;" that

he advised having the remains clothed in another suit and that this was done.

Another witness, Cecil Arthur Rickard, testified that he saw the dead body; that the "right leg was bruised from thigh to knee;" that "he was bruised on his chest, about a size just to cover the whole chest here;" that the navy blue suit of clothes was in a dirty state, "all dirt on the side here dirt on the sides here and his pants were all dirty;" and that "it was torn to the knee, the trousers was, the right knee."

In answer to hypothetical questions, several physicians testified that in their opinion the pneumonia which was the immediate cause of the death "might have been caused" by a blow or impact or other force received from without and one physician gave it as. his direct opinion that the pneumonia was so caused. We deem it unnecessary, however, to examine the evidence on this subject with thoroughness, the question now under consideration being not whether there was sufficient evidence to support a finding that an automobile accident caused the pneumonia but whether there was sufficient evidence to support a finding that there was an automobile accident.

There was no direct evidence whatever that any accident happened to the automobile on the trip in question or on any other trip at or about that time. The foregoing recital contains substantially all that can possibly be claimed to be indirect or circumstantial evidence tending to show that fact. In our opinion, if it is evidence at all upon that issue, it is not more than a mere scintilla and cannot possibly be held to justify a finding by the jury, even if all believed to be true, that there was an automobile accident as alleged in the declaration. The bruises and contusions, such as they were, contain in themselves no indication that they were suffered in the course of an automobile accident. So, also, the fact

that the automobile arrived at Kahuku in a dirty condition, while it might conceivably, if there were other evidence in the case, be regarded as to some extent corroborative of the claim of an accident of that nature, is nevertheless evidence so very slight that standing alone it cannot be regarded as sufficient to support a finding of the occurrence of an accident of that nature. It is matter of common knowledge that it is practically impossible to drive an automobile from Honolulu to Kahuku over the pali without having it arrive there in a dirty condition. It is an ordinary every-day occurrence for automobiles making that trip, of about thirty-seven or thirty-eight miles, to arrive in a dirty condition. Regarding the evidence adduced in the light most favorable to the claims of the plaintiff, in our opinion there is not more than a scintilla of evidence, if such there is, tending to show the occurrence of an automobile accident and a finding that there was such an accident cannot be sustained.

The further contention is advanced, however, that the allegation in the declaration that the accident which caused the death of the insured was the overturning of an automobile is unnecessary and constituted surplusage; that there was evidence sufficient to support a finding that the pneumonia was caused by an accidental, external injury and that, therefore, even though the particular nature of the accident does not appear from the evidence, the verdict must, nevertheless, be sustained. In the view which we take of this contention, it is unnecessary to consider whether the evidence, which was adduced and which in substance is recited above, was sufficient as a matter of law to support a finding that there was an accident, whatever its nature, or was sufficient to show that the pneumonia which caused the death was traumatic in its nature, that is, was caused

by a blow or impact or other force from without. So, also, for the same reason, it is unnecessary for us to consider whether a declaration in a case such as this in which it is alleged, substantially in the language of the insurance policy, that the death of the insured was caused solely by an external accident, the nature of which is to the plaintiff unknown and is therefore not set forth, would be good against a demurrer thereto or whether, if good against the demurrer, the plaintiff would be compellable to specify in a bill of particulars the nature of the accident. It may be assumed for the purposes of this opinion that such a declaration would be sustainable upon demurrer and that the plaintiff would not be compellable to specify in a bill of particulars the nature of the accident. Our disposition of the remainder of the case rests upon these assumptions.

Pleadings are statements "in logical or legal form of the facts which constitute the plaintiff's cause of action or the defendant's ground of defense." They are "the formal mode of alleging on record that which would be the support or the defense of the party in evidence. The pleadings are the allegations made by the parties to a civil or criminal case for the purpose of definitely presenting the issue to be tried and determined between them." 22 A. & E. Ency. L. 837. They are "statements, in logical and legal form, of causes of action and grounds of defense, terminating in a single proposition affirmed on one side and denied on the other. They are intended to form the foundation of the proof to be submitted on the trial, and should advise the parties to an action what the opposite party relies upon either as a cause of action or defense or objection as the case may be." 31 Cyc. 43, 44. "Pleadings are the allegations made by the parties, to a civil or criminal case, for the purpose of definitely presenting the issue to be

tried and determined between them. The end proposed is to bring the matter of litigation to one or more points, simple and unambiguous." 9 Ency. U. S. Rep. 422.

Probably when courts were first instituted oral pleadings would have been sufficient. In the absence, however, of waiver, there can be no doubt that, at this day in this jurisdiction, declarations, bills of particulars and answers in actions at law such as the one at bar are required to be wholly in writing. The object always is to arrive at a precise statement of the issues involved and to inform the court and the opposing party of the claims advanced and relied upon by the pleader.

"If the right of deciding absolutely and finally all matters in controversy between suitors were committed to a single tribunal, it might be left to collect the nature of the wrong complained of, and the remedy sought, from the allegations of the party *ore tenus,* or in any other manner it might choose to adopt. But the common law, which wisely commits the decision of questions of law to a court supposed to be learned in the law, and the decision of the facts to a jury, necessarily requires that the controversy, before it is submitted to the tribunal having jurisdiction of it, should be reduced to one or more integral propositions of law or fact; hence it is necessary that the parties should frame the allegations which they respectively make in support of their demand or defense into certain writings called pleadings. These should clearly, distinctly, and succinctly, state the nature of the wrong complained of, the remedy sought, and the defense set up. The end proposed is to bring the matter of litigation to one or more points, simple and unambiguous." *McFaul* v. *Ramsey,* 61 U. S. 523, 524.

"The object of pleading is to concentrate the controversy upon the questions of fact and of law, which should control the result. The value of the system in the

administration of justice can hardly be too highly esti-
mated.    The exclusion from the testimony of everything
irrelevant and incompetent is not less important." *United
States* v. *Gilmore,* 74 U. S. 491, 494, 495.

"The office of pleading is to inform the court and the
parties of the facts in issue; the court, that it may de-
clare the law, and the parties, that they may know what
to meet by their proof." *Hill* v. *Mendenhall,* 88 U. S.
453, 455.

Pleadings should be clear and unambiguous and must
be so framed as not to mislead or deceive the opponent
as to what the foundation or essence of the pleader's
claim is.    If in a given instance a general allegation
would have sufficed as matter of law and yet in the plead-
ing a more specific statement is made of the grounds of
defendant's liability the pleader is confined to proof
of the claim set forth if the additional specification is
material and substantial and serves to identify the
particular fact or cause of action or grounds of defense.
The contrary would be true if the additional specification
is of purely immaterial matter which would properly be
regarded as surplusage.

"It is a rule of pleading, applicable to cases like the
present, that the plaintiff must, in his declaration, state
the nature of the defendant's liability, and he must prove
it as laid.    1 Chitty's Pleading, 417.    And, although
this may be done by a general mode of allegation, yet if,
instead of doing so, the plaintiff states the ground of
the defendant's liability with unnecessary particularity,
he must prove it as laid.    1 Chitty's Pleadings, 265;
Stephens on Pleading, 85; 1 Greenleaf's Evidence, sec.
65; 1 Starkie's Evidence, 377." *Gridley* v. *Bloomington,*
68 Ill. 47, 49.

"Undoubtedly, the rule is that the proofs must cor-
respond with the allegations in the declaration, but the

requirement in that behalf is fulfilled, if the substance of the declaration is proved. * * * Allegations of fact in the pleadings, affirmed on one side and denied on the other, must in general be tried by a jury, and the purpose of the rule which requires that the allegations and the proofs must correspond, is that the opposite party may be fairly apprised of the specific nature of the questions involved in the issue. Formerly, the rule in that respect was applied with great strictness, but the modern decisions are more liberal and reasonable." *Nash* v. *Towne,* 72 U. S. 689, 698.

"The general rule is, that the allegations in the answer or plea and the proof must agree; and as there were no averments in the plea, to authorize the proof, it was properly rejected by the court." *Wilcox* v. *Hunt,* 38 U. S. 376, 379.

"As a general rule issues should be confined to such matters as are affirmatively alleged on the one side and sufficiently denied on the other. But this rule will not be applied with undue strictness, and any controverted matter substantially within the pleadings may raise an issue. However, the court will not go entirely outside the pleadings in order to consider matters that cannot fairly be said to be within the issues, and a wholly different issue from the one indicated by the pleadings should not be submitted to the jury. It is not proper for the court to direct any matter of fact to be put in issue which is not written within the pleadings. A denial of any matter by one party will not create an issue unless the same matter has been alleged by the other party." 31 Cyc. 673.

"A distinction has been recognized, however, between allegations which are both unnecessary and irrelevant, and those allegations, which, although unnecessary, are relevant. Thus it has been held that in a case where

defendant's liability may be stated in general terms, if plaintiff alleges such liability, with unnecessary fulness and particularity, he may be forced to prove the allegations as laid." 31 Cyc. 676.

"In short, the plaintiff brought the defendant into court to answer to a claim made upon an express contract, and upon that alone; that was the issue tried below. That issue was properly adjudicated, and, on familiar principles, we are prohibited from reversing the judgment upon the theory that if another issue had been presented and tried it might have resulted in favor of the plaintiff." *Kent* v. *Phenix Art Metal Co.,* 69 N. J. L. 532, 540.

"It is always safe, in approaching a question of this kind, to have regard to the pleadings in the case. Otherwise there is danger that the court and counsel may be drawn into discussions outside of the case actually presented. * * * It is a general rule that questions that are not within the issues presented by the pleadings may not be determined by the courts." *United States* v. *N. P. Ry. Co.,* 177 U. S. 435, 437, 438.

"The object in having written pleadings is that the parties may know what issues they are to meet. The appellants had no right to anticipate any defense not set up in the pleadings, and the court should not have submitted by his instruction any other issue, over their objections, to the jury." *Taylor* v. *Combs,* 50 S. W. (Ky.) 64, 66.

"It is doubtless true that evidence must correspond with the allegations and be confined to the point in issue, and if in the examination of witnesses facts come out which, had they been alleged, would furnish ground of relief or defense, such facts must be disregarded unless they are warranted by the allegations of the pleadings. * * * The true object of pleading is and always

has been to apprise the adverse party of the ground of action or defense, in order that he may be prepared to contest it, and may not be taken by surprise. * * * The rules of pleading will generally be found to be ancillary to or the logical sequence of this cardinal principle or rule." *Finley* v. *Quirk,* 9 Minn. 179, 180, 185, 186, 187.

"Unnecessary allegations in a complaint require proof that would not have been essential if the pleading had been confined to the indispensable averments only, when such allegations constitute an essential part of the statement of the cause of action. If the cause of action is well stated without them, they may be disregarded as surplusage, and they do not affect the issue." *Commissioners* v. *Keene Bank,* 108 Fed. 505, 515.

"There are cases where unnecessary particularity of averment will require a corresponding exactness in proof to avoid a variance. This is so whenever the unnecessary matter cannot be stricken out without destroying the right of action, or where it identifies the contract or fact averred. * * * It seems to be settled, that in such a case, the allegation and the proof must correspond." *Dickensheets* v. *Kaufman,* 28 Ind. 251, 253.

"The right of recovery is confined to the cause of action alleged in the declaration and there can be no recovery upon a cause of action however meritorious or satisfactorily proven that is substantially variant from the one alleged by the plaintiff." *Wilkinson* v. *R. R.,* 17 So. (Fla.) 71.

Bills of particulars are not parts of the pleadings to which they refer but are sometimes required by courts to be filed in order that the court and the opponents may be informed of the nature of the claim and in order to guard against surprise at the trial. When filed they operate to narrow the claim or the defense, as the case may be, and confine the pleader to evidence within the

narrower issue thus presented. What has been said by judges and text-writers on this subject applies equally to proof of the claim as stated in the original pleading itself when it is not followed by a bill of particulars.

"The chief office of a bill of particulars is to amplify a pleading and more minutely specify the claim or defense set up. * * * Another object * * * is to prevent surprise on the trial, by furnishing that information which a reasonable man would require respecting the matters against which he is called upon to defend himself; and by thus limiting the generality of the pleading its effect is to confine the proof to the particulars specified therein." 3 Ency. Pl. & Pr. 519, 520.

"The general rule to be extracted from these analogous cases, is, that where, in the course of a suit, from any cause, a party is placed in such a situation, that justice cannot be done in the trial, without the aid of the information to be obtained by means of a specification or bill of particulars, the court, in virtue of the general authority to regulate the conduct of trials, has power to direct such information to be seasonably furnished, and in an authentic form; and that such an order may be effectual and accomplish the purpose intended by it, the party required to furnish a bill of particulars, must be confined to the particulars specified." *Commonwealth* v. *Snelling,* 15 Pick. 321, 331.

"He who has furnished a bill of particulars * * * . must be confined to the particulars he has specified, as closely and effectually as if they constituted essential allegations in a special declaration." *Commonwealth* v. *Giles,* 1 Gray 466, 469.

"The object of requiring the plaintiff to file a bill of particulars is to inform the defendant of the claim he is called upon to defend against, and its effect is to limit and restrict the plaintiff, on the trial, to proof of

the particular cause or causes of action therein men-
tioned." *Waidner* v. *Pauly,* 141 Ill. 442, 445.

"The effect of furnishing the bill is to limit the evi-
dence which the plaintiff may offer in support of his
claim." *Chamberlain* v. *Loewenthal,* 138 Cal. 47, 49.

"The claim of the plaintiff is restricted and his right
to recover limited by his specification. * * * A bill of
particulars should give as much information as a special
declaration, so that the defense may know the real ground
of the action." *Brown* v. *Rouillard,* 102 Atl. (Me.) 701.

"The general rule appears to be that a substantial de-
parture from the specifications of the bill of particulars
will constitute a variance, although formal and technical
variations will not do so. Variances will not be deemed
material which have not misled the opposite party to
his prejudice." 31 Cyc. 704; 570. The converse is
equally true that variances will be deemed material which
would mislead the opposite party to his prejudice.

"The question in applications of this kind" (for a
bill of particulars) "is not what may have been the actual
facts, nor the knowledge of the opposite party concern-
ing them, but rather what the aggrieved party claims
them to be. What they claimed to be is the issue that
is to be met and tried; and where the pleading is not
specific in this regard a bill of particulars is properly
ordered to point out such claims and thus make definite
the issues to be litigated. * * * The purpose of such
a bill is to amplify the pleadings and to indicate, with
more particularity than is ordinarily required in a formal
plea, the nature of the claim made, in order that sur-
prise upon the trial may be avoided and that the issues
may be more intelligently met." *Dwyer* v. *Slattery,* 103
N. Y. S. 433, 434.

"Under the bill of particulars as filed, the plaintiff

was not required to prepare to meet such a defense." *Ritter* v. *Daniels,* 47 Mich. 617, 618.

"The object of the practice for the production of bills of particulars is to obviate the uncertainty of general pleading. The intent is to secure such information as will enable the parties to make an intelligent preparation for trial, and to enter upon the investigation before the court or jury with an understanding as to what is really in controversy. The bill is often mentioned as being an amplification of the declaration or as entitled to be considered as a part of the pleading. But such expressions are metaphorical. The bill is never in strictness a component of the pleading. It may have the effect of a pleading in so far as it restricts the proof to what it contains." *Cicotte* v. *Wayne Co.,* 44 Mich. 173, 174, 175.

The rule confining the proof to the allegations must of course be applied reasonably and liberally. Applications of the rule are no longer characterized by extreme strictness. When the unnecessary specification is a matter purely immaterial, failure of proof is not fatal, —as for example in *Wilson* v. *Codman's Executor,* 3 Cranch (U. S.) 193, in which proof of a "perfectly immaterial averment" was held unnecessary. In that case, however, the court intimated that if "that averment be descriptive of a written instrument, which, by being untruly described, may, by possibility, mislead the opposite party," the proof should be confined to the averment as made. But if the matter specified is material and identifies the fact or the cause of action the proof is confined to the specification. In cases of negligence, for example, it has often been held that the proofs must conform to the particular act or omission alleged, even though broader allegations of negligence might have sufficed if they had been made.

"Where a party charges a specific act of negligence, he

is concluded thereby and cannot recover upon matters not alleged." *Telle* v. *Ry. Co.,* 50 Kans. 455, 465.

"Having reached the conclusion that the acts of the defendant which are relied upon as a basis of recovery and which must be the proximate cause of the injury, must be alleged in the complaint, it follows as a necessary consequence that the evidence on the part of the plaintiff must be directed to the proof of those facts, and the instructions of the court must be confined to the allegations and proofs. It is the law arising upon these allegations and upon the evidence submitted to sustain them which the court is to expound to the jury. It is upon the facts thus ascertained and the law applicable to them which will authorize a verdict." *Woodward* v. *R. R. Co.,* 18 Ore. 289, 298, 299.

"The plaintiff must state the facts which constitute his cause of action. He cannot state one and prove another, nor, if he states none, can he supply the defects in his petition by evidence at the trial." *Field* v. *R. R. Co.,* 76 Mo. 614, 616, 617.

"The rule is very well established that, if the plaintiff specifically plead the act or acts constituting the defendant's negligence, he cannot prove other and different act or acts for the purpose of substantiating his complaint. * * * The natural inquiry is, What was the cause of the injury? The complaint must answer the question in the first instance. We look to that because it is the means designed by our judicial system to apprise both the court and the parties of the precise subject of controversy." *R. R. Co.* v. *Hurley,* 4 Ariz. 258, 260, 262.

"Our law requires a plaintiff plainly and distinctly to set forth his cause of action. And if one bring a suit based on one set of facts, it is obviously unfair to permit him to recover on another dropped out incidentally, and perhaps by way of defense. The right to amend is very

broad and if parties desire to modify their cases, it is unfair to do so in a speech to the jury. Here was a definite act of negligence stated and relied on in the declaration. That other acts bearing that designation dropped out in the proof, did not make out the case, and the court should have charged as requested." *R. R.* v. *Oaks,* 52 Ga. 410, 416.

"The negligence charged in the declaration was the alleged wrongful order of appellant's servants, in obedience to which appellee claimed to have gone into a dangerous place. It was improper to tell the jury that if that charge was not sustained, appellee might recover if 'the injury was caused by other negligence of the defendant.' " *R. R. Co.* v. *Rayburn,* 153 Ill. 290, 292, 293.

"Whether it was necessary for the plaintiff to aver that the defendant was guilty of negligence, and, if. so, whether it was necessary for him to aver in what the negligence consisted, we need not determine. Having averred negligence, and in what the negligence consisted, we think that the plaintiff should not have been allowed to show other negligence. The defendant, it seems to us, was justified in assuming that the issue was not broader than that which the plaintiff, by his express averments, had seen fit to tender. If we should hold that the plaintiff might aver one kind of negligence and prove another, we should not only hold, in effect, that the averment had no significance, but that it was allowable for the plaintiff to so frame his petition that it should be well calculated to deceive and mislead the defendant." *Carter* v. *R. R. Co.,* 65 Ia. 287, 288. See also *Ry.* v. *Grablin,* 38 Neb. 90, 96.

Applying these principles to the case at bar, the plaintiff specified in the declaration that the alleged fatal injuries of the insured were caused by the overturning of an automobile. The only additional specification in

the bill of particulars was of the place where the accident occurred and may be here disregarded because the failure of proof contended for by the defendant is not that concerning the place of the accident but is that relating to the more fundamental and more important issue as to whether any automobile accident whatever occurred. The defendant in preparing for trial and in presenting its evidence had a right to rely upon the specification in the declaration that the accident consisted in the overturning of the machine and was not required to search for or adduce any evidence tending to refute a claim that the accident was of some other nature, as, for example, that it was by drowning, by lightning, by falling out of a balloon or aeroplane, by falling off of a horse or by tumbling over a precipitous cliff. Indeed, any such evidence offered by way of defense would have been inadmissible under the pleadings as also would have been evidence offered by the plaintiff that the accident was of a nature other than that alleged. To hold, in the face of the declaration, that an accident of any nature, known or unknown, was provable by the plaintiff under the pleadings, would be to encourage and support pleadings well calculated to mislead the defendant as to the preparations necessary for trial and as to the search for evidence incumbent upon it. The plaintiff, of course, could have moved at the trial to amend the declaration so as to alter or broaden the issues; but this was not done. If it had been done the defendant could well have asked for a substantial delay in the trial in order to search for further evidence admissible under the altered or enlarged claim of the plaintiff. There was no duty upon the defendant to move for a nonsuit. It raised the question of the insufficiency of the evidence by its exception to the verdict and by its request for an instruction that "there is no evidence of an accident to insured

as alleged in plaintiff's complaint and bill of particulars." To adopt the suggestion made in the minority opinion that this court do now of its own motion order the declaration amended to conform to the proof by striking out all reference to the overturning of an automobile and thereupon do affirm the judgment and dismiss the writ of error, would be to adjudicate adversely to the defendant an issue (the most important one in such a case as this) upon which it has not been heard and of which it had no notice prior to the close of the trial. The defendant had a right to look to the plaintiff's declaration for an answer to the question as to what the plaintiff's claim was. To this day the plaintiff has not claimed in her pleadings that the decedent died of an accident the nature of which was to the plaintiff unknown and the only claim that she has advanced is that he died of an accident which consisted in the overturning of an automobile. If hereafter the declaration shall be successfully amended so as to present the broader issue, the defendant will have an opportunity to search for and the right to present at the new trial evidence competent to disprove the occurrence of any accident of any nature whatsoever. There has been as yet no such broader issue. At the new trial the evidence may properly, and naturally would, cover a much wider range than that which was adduced at the first trial.

The verdict is set aside and a new trial is granted.

*Frear, Prosser, Anderson & Marx* and *A. E. Steadman* for plaintiff in error.

*Thompson, Cathcart & Beebe* and *Marguerite K. Ashford* for defendant in error.

### DISSENTING OPINION OF PETERS, C. J.

This is an action by the beneficiary under an accident insurance policy of the Preferred Accident Insurance

Company of New York, by the terms of which the insured, Dr. Harvey L. Ross, the husband of the beneficiary, was insured against disability or death "resulting directly, independently and exclusively of any and all other causes from bodily injury effected solely through external, violent and accidental means." The beneficiary had judgment below and the insurance company prosecuted this writ of error. The parties will be hereafter referred to as they appeared below.

Of the questions raised by the assignments of error I consider the discussion of but two necessary for the determination of this appeal, namely, (1) whether the requirements of the policy of written notice and the affirmative proof of death were waived by the insurer and (2) whether the death of the insured resulted "directly, independently and exclusively of any and all other causes from bodily injury effected solely through external, violent and accidental means." Both questions were raised by defendant in the trial court upon motion for a directed verdict, instructions requested and refused and motion for a new trial.

(1) It is undisputed that the assured, Dr. Harvey L. Ross, is dead; that on September 27, 1921, the date of the death of the assured, the policy was in full force; that Ethel A. Ross, widow of decedent, was the beneficiary thereof and that $7500, the amount claimed, is the sum due provided a valid claim exists. The policy contains the following provision: "Written notice as soon as may be reasonably possible after the happening of an accident must be given to the company at New York City of bodily injury or death on account of which a claim is to be made, together with complete particulars thereof and the name and address of the insured. Affirmative proof of death * * * must also be given to the company within two months from the time of death * * *.

Claims not brought as required by this policy shall be forfeited to the company. * * * No agent has authority to change this policy or to waive any of its provisions, nor shall notice to any agent or knowledge of his or of any other person be held to effect a waiver or change in this contract or in any part of it." The record is more or less vague as to just exactly what had been done by the beneficiary or those acting in her behalf prior to December 30, 1921, to comply with the terms of the policy regarding written notice and affirmative proof of death. That a claim by the beneficiary had been the subject of representations to and replies by the insurer is apparent from the correspondence hereafter referred to. It cannot be said that the evidence would sustain the finding that prior to December 30, 1921, written notice of the death of the assured had been given to the company at New York City together with complete particulars thereof and the name and address of the assured, nor that affirmative proof of death had been given to it within two months from the time of death. It is apparent, however, from the correspondence hereafter to be adverted to that such written notice and affirmative proof of death were given to the company in strict accordance with the terms of the policy between December 30, 1921, and April 4, 1922, and that the requirements of the policy that written notice on the one hand be made as soon as reasonably possible after the happening of the accident and that affirmative proof of death on the other be made within two months from the time of death were impliedly waived by the insurer. On December 30, 1921, Mr. Bruce Cartwright, the local agent of the insurer, upon stationery of the insurer, in which he is described as the "Manager for Territory of Hawaii," wrote to the plaintiff's attorney advising the latter that he was in receipt of a letter from

his principal under date of December 20, 1921, in which it stated that although in its opinion there was no claim, still "an investigation should be made," and asked counsel to write Mr. Cartwright a letter explaining his reasons for believing that Dr. Ross' death was due either directly or indirectly to an accident and giving a full history of the case including all particulars which he deemed necessary to detail. The attorney for the beneficiary complied with this request in writing on February 2 following. On February 23, 1922, Mr. Cartwright, upon similar stationery of the insurer, wrote the attorney for the beneficiary asking for "a full and complete statement covering the alleged accidental happening which resulted in the death of Dr. Ross," concluding with the observation: "It is necessary for them" (referring to the insurer) "to have this statement in order to determine whether or not the company is liable." Not receiving an immediate reply to his letter of February 23, 1922, Mr. Cartwright on March 27 again wrote the attorney for the beneficiary calling attention to his former letter of February 23, 1922, and requesting a reply thereto. Plaintiff made full reply to Mr. Cartwright's letter of February 23, 1922, on April 4, 1922. The answers of the attorney of the beneficiary of February 2 and April 4, 1922, were in writing. They set forth in detail the name of the assured, the date of the accident, the alleged cause of accident and the circumstances thereof, the injuries received thereby and the statement of the attending physician. In short they contained complete particulars of the accident. The residence of the deceased for obvious reasons was not given. Not alone did these answers of the attorney for the beneficiary comply with the requirements of the policy as to written notice but they also contained affirmative proof of death. The requirement of affirmative proof of death

is satisfied by supplying such evidence as would tend to prove the death of the assured from the cause insured against. "By affirmative proof is meant such evidence of the truth of the matters asserted as tend to establish them, and this regardless of the character of the evidence offered." *Jenkins* v. *Hawkeye Commercial Men's Association*, 124 N. W. (Ia.) 199, 201. Moreover, the letters of the agent of the company dated December 30, 1921, February 7, February 23, and March 27, 1922, written, as therein declared, at the instance and request of the company in compliance with the request therein contained, as evidenced by the replies of the attorney of the beneficiary under dates of February 2 and April 4, 1922, constituted a waiver by the insurer of the failure of the beneficiary within two months of the death of the assured to give written notice and affirmative proof of death as required by the policy. Where the time for filing written notice of an accident and affirmative proof of death required under the terms of the policy of accident insurance has expired the insurer has the option to invoke a provision of a policy that "claims not brought as required by this policy shall be forfeited to the company" and declare forfeited the claim of the beneficiary or consider the policy to be still in full force and effect. But it cannot do both. If in the exercise of its option it treats the policy as in full force and effect and causes the beneficiary to go to additional trouble and incur extra expense in relation to his claim then the insurer will be considered as having waived its right of forfeiture and will be estopped from subsequently asserting the same. In the instant case, after the time for the filing of written notice of the accident and affirmative proof of death had expired, the insurer requested of the beneficiary through her attorney that she furnish further information as to the facts and circumstances

Peters, C. J., dissenting.

of her husband's death. This subjected the beneficiary
to additional trouble and expense and it does not now
lie in the mouth of the insurer to say that it declared
the policy forfeited for the failure on the part of the
beneficiary to file written notice of the accident and
affirmative proof of death within the time required by
the policy.  To constitute such estoppel "it is sufficient
if the declarations or conduct of the insurer, subsequent
to the breach of the condition, indicate an intention to
waive or not to rely on the condition, and the insured
or beneficiary is thereby induced * * * to incur some
trouble or expense; and very slight circumstances are
sufficient to establish a waiver of the condition. * * *
The right to insist upon a forfeiture for failure to give
notice of the accidental injury within the prescribed
time is waived by the insurer retaining, without objec-
tion, the notice and proofs of death subsequently fur-
nished, and requesting further proof." 1 C. J., title
"Accident Insurance," §§ 196, 198, pp. 478, 479.  In
the case of *Trippe* v. *Provident Fund Soc.,* 35 N. E.
(N. Y. App.) 316, at 317, the court said: "It is well set-
tled that such defenses are waived when the company
with knowledge of all the facts requires the assured by
virtue of the contract to do some act or incur some ex-
pense or trouble inconsistent with the claim that the
contract had become inoperative in consequence of a
breach of some of the conditions."  See also *Moore* v. *Cas-
ualty Co.,* 57 N. E. (Mass.) 673; *Sheanon* v. *Pacific Mut.
Life Ins. Co.,* 53 N. W. (Wis.) 878, 883; *Silverhorn* v.
*Pacific Mut. Life Ins. Co.,* 24 Haw. 366; *Young* v. *Rail-
way Mail Ass'n,* 103 S. W. (Mo. App.) 557, 559; *Hohn* v.
*Interstate Casualty Co.,* 72 N. W. (Mich.) 1105; *Mer-
chants' Ins. Co.* v. *Gibbs,* 56 N. J. L. 679; Joyce on In-
surance §§3367, 3370; Cooley's Briefs on the Law of
Insurance p. 3510.

(2)   The assignments of error pertinent to the second question involve the ruling of the trial court upon defendant's motion for a directed verdict, the grounds of which were repeated substantially in certain instructions requested and refused and its motion for a new trial and depend for their solution upon three questions: (a) What was necessary for plaintiff to allege in her complaint to state her cause of action under the policy? (b) May relevant and material but unnecessary allegations be rejected as surplusage? and (c) If the preceding question (b) is answered in the affirmative does the evidence sustain the judgment?

(a)   The complaint after reciting the terms of the policy of insurance alleges the breach thereof by defendant as follows:   "That on or about the 21st day of September, 1921, and while said policy was in full force and effect, said Harvey L. Ross received a bodily injury solely through external, violent and accidental means; to-wit: bruises and contusions caused by the accidental overturning of an automobile driven by the said Harvey L. Ross, which said injury caused the death of the said Harvey L. Ross within ninety days thereafter; to-wit, on the 27th day of September, 1921; and that his said death resulted directly from said accident, independently and exclusively of all other causes.   *   *   *   That defendant has paid to plaintiff no part of said sum of Seven Thousand Five Hundred Dollars ($7,500.00)."

Pursuant to an order of court that she file a bill of particulars plaintiff gave the following particulars of the accident:   "That said accident more fully described and set forth in plaintiff's bill of complaint herein took place and happened on the Island of Oahu, Territory of Hawaii, and while plaintiff's decedent was driving said automobile from Honolulu to Kahuku, and said accident happened in the District of Koolaupoko on said

Island of Oahu as aforesaid." Without going into the question of the office that a bill of particulars performs in respect to pleadings which it seeks to amplify but conceding to it a dignity to which it is not entitled— considering it in the light of a part of the bill of complaint—treating the complaint and bill of particulars as one—we have a complaint which not alone alleges the breach of the contract of insurance but alleges in addition thereto the manner in which the breach was effected. In *Richards* v. *Travelers' Ins. Co.,* 26 Pac. (Cal.) 762, 763, the court said: "The first objection is that the complaint does not state the particular circumstances under which the death of the insured occurred,—that is, whether it was caused by lightning, drowning, railroad collision, etc. But the complaint avers that at a named date the deceased 'sustained bodily injuries, effected through external, violent, and accidental means; and that on, to-wit, the 27th day of May, 1887, the said Philip Richards died at Nevada City, Nevada county, California; and that the said death was occasioned by said injuries alone.' This language, which avers a state of facts expressly provided against by the covenants of the policy, is sufficient as against an attack which is no more specific than a general demurrer." To the same effect is *Railway Officials' & Employes' Acc. Ass'n* v. *Armstrong,* 53 N. E. (Ind.) 1037, 1038: "This appeal is prosecuted from a judgment in appellee's favor as beneficiary named in an accident insurance policy. The assignment of errors questions the sufficiency of the first, second, third, and fourth paragraphs of complaint, the refusal to grant a new trial, and sustaining the demurrer to the second paragraph of answer to the first paragraph of complaint. It is argued that neither paragraph of complaint sufficiently avers an accidental death. The policy provides that 'no claim of any character shall ever accrue

28

upon this contract unless it arise because of, and as the direct and immediate result of, physical bodily injury effected while this contract is in force, and then only when such injury undoubtedly proceeds from, and is inflicted by, external, violent, and accidental means.' Each paragraph of the complaint avers that on August 5, 1893, the insured was killed, his death resulting solely from physical bodily injuries proceeding from and inflicted by external, violent, and accidental means, the same producing immediate death. These averments are certainly sufficient." In the case of *Jamison* v. *Continental Casualty Co.*, 78 S. W. (Mo.) 812, 813, the plaintiff went further in his complaint than in the *Richards* case and alleged in addition to the words of the policy the allegation that the wound had been inflicted by a blow with "some hard substance" and that "a more particular description of the circumstances of said accident cannot here be given, because they are to the plaintiff unknown." The court in effect held that the allegations that death resulted solely and independently of all other causes from personal bodily injuries sustained through external, violent and purely accidental means (the words of the policy defining the event upon which the liability of the insurer was contingent) were sufficient. I quote: "The point is made against the petition that it does not state that the mortal wound was received by accident, but, on the contrary, disclaims any knowledge of how it was caused. The petition states that on the day mentioned the 'insured sustained personal, bodily injuries, through external, violent, and purely accidental causes, within the terms of said policy, which injuries, solely and independently of all other causes, resulted in the death of said Oscar Jamison within ninety days of the accident, to wit, within two days thereof, in that, while he was employed as a bridgeman,

as aforesaid, he was struck upon the head with some hard substance, inflicting a mortal wound, from which he, Oscar Jamison, died on the —— day of April, 1902.' That language is precise and full enough to constitute a good averment that the insured met death by an 'external, violent, and purely accidental cause.' The only basis for the attack on the petition is this sentence following the above allegation: 'A more particular description of the circumstances of said accident cannot here be given, because they are to the plaintiff unknown.' The petition avers a mortal wound in the head, accidentally received, caused the death of the insured, and ought not to be held insufficient because it goes further, and states that the pleader was ignorant of the circumstances of the tragedy. The pleading was proof against an attack before verdict. But none was made until after verdict, when the petition is to be more generously regarded, and no requirement imposed, except that it must be inferable from its express averments that the deceased was killed by accidental violence. *Munchow* v. *Munchow*, 96 Mo. App. 553, 70 S. W. 386. Unquestionably, enough is stated to justify that inference, if, indeed, the fact is not positively alleged, and we think it is alleged." See also *Pacific Mut. Life Ins. Co.* v. *Shields,* 62 So. (Ala.) 71, where the court at page 72 said: "The policy is not a regular life insurance policy, but is one known as 'industrial, health and accident policy.' It, however, contains provisions for the payment of an amount named in the policy, in case of the death of the insured, upon certain specified conditions. One of these conditions is that the death of the insured must have been caused solely by 'external, violent and accidental means.' "

Defendant proceeds upon the theory that having described the circumstances of the injury it was incumbent upon the beneficiary to prove them. This may be true of

an action in tort where facts and circumstances descriptive of the act complained of are alleged to show that it was committed negligently. Failure of proof of such allegations would constitute a failure to prove negligence. But this is an action upon contract. A description of the manner of the breach is immaterial. Even though plaintiff failed to show that the overturning of the automobile was the cause of the injury she did show as is hereafter more particularly pointed out that the assured sustained certain bodily injuries as a result of means unknown but consistent with the overturning of the automobile of the deceased, and within the terms of the policy. Proof of more was unnecessary to her recovery.

(b) The allegations of the complaint in reference to the overturning of the automobile, though material and relevant, were unnecessary to plaintiff's cause of action and being divisible from the remaining allegations of the breach may be considered as surplusage. An allegation though material and relevant, if unnecessary, need not be proved.

Chitty says: "In general, whatever circumstances are necessary to constitute the cause of complaint or the ground of defense, must be stated in the pleadings, and all beyond is surplusage." 1 Chitty Pl. (16 Am. Ed.) *236. Surplusage is best defined as "all matter contained in a pleading beyond whatever circumstances are necessary to constitute the cause of complaint or ground of defense." 21 Ency. Pl. & Pr. 226. See also *Lord* v. *Tyler,* 14 Pick. (Mass.) 156, 165; *Smith* v. *Holmes,* 54 Mich. 104, 110; *Attorney General v. Michigan State Bank,* 2 Dougl. (Mich.) 358, 361; *Davison* v. *Schermerhorn,* 1 Barb. (N. Y.) 480. Stephen says: "The rule as to avoiding surplusage may be considered, first, as prescribing the omission of matter wholly foreign * * *. The rule also prescribes the omission of matter which,

though not wholly foreign, does not require to be stated."
Stephen Pl. (3 Am. Ed.) 364, 365. The common-law
penalty of prolixity or redundancy was the additional
burden imposed upon the pleader of proving all allega-
tions as made. Chitty at *252 says: "The statement of
immaterial or irrelevant matter or allegations, is not only
censured, as creating unnecessary expense, but also fre-
quently affords an advantage to the opposite party, either
by affording him matter of objection on the ground of
variance, or as rendering it incumbent on the party plead-
ing to adduce more evidence than would otherwise have
been necessary. It is therefore of the greatest importance
in pleading to avoid any unnecessary statement of facts,
as well as prolixity in the statement of those which may
be necessary. If a party take upon himself to state in
pleading a particular estate, where it was only required
of him that he should show a general or even a less
estate, title or interest, the adversary may traverse the
allegation, and if it be untrue, the party will fail" (giv-
ing examples). "These are instances of *material* matter
being alleged with an *unnecessary detail of circumstances
or particularity.* The *subject-matter* of the averment is
material and relevant, and the evil is, that the essential
and the immaterial parts are so interwoven as to expose
the whole allegation to a traverse, and the consequent
necessity of proof to the full extent to which it is carried
by the pleading. If, however, the matter unnecessarily
stated be wholly foreign and irrelevant to the cause, so
that no allegation whatever on the subject was necessary,
it will be rejected as surplusage, and it need not be
proved * * *. As observed by Lord Mansfield" (citing
the case of *Bristow* v. *Wright,* Doug. 667, 99 Eng. Repr.
421) " 'the distinction is between that which may be
rejected as surplusage, which might be struck out on
motion, and what cannot.' " Further citation from the

*Bristow* case is apropos: "It is easy for a party to state his ground of action. If it is founded on a deed, he needs not set forth more than that part which is necessary to entitle him to recover. If he states what is impertinent, it is an injury to the other party, and may be struck out, and costs allowed, upon motion. * * * When I say that the plaintiff needs only set forth that part of a deed on which his action is founded, I do not mean to say that even that is necessary. He is not bound to set forth the material parts, in letters and words. It will be sufficient to state the substance and legal effect. That is shorter, and not liable to misrecitals, and literal mistakes. Here, that method might have been followed. *It certainly was not necessary to allege this part of the lease that relates to the time of payment in order to maintain the action. But, since it has been alleged, it was necessary to prove it.* The distinction is between that which may be rejected as surplusage, (which might have been struck out on motion,) and what cannot. ˙Where the declaration contains impertinent matter, foreign to the cause, and which the master, on a reference to him, would strike out, (irrelevant covenants for instance,) that will be rejected by the court, and need not be proved. But if the very ground of the action is misstated, as where you undertake to recite that part of a deed on which the action is founded, and it is misrecited, that will be fatal. For then, the case declared on is different from that which is proved, and you must recover secundum allegata et probata. This will reconcile all the cases. In the present instance, the plaintiff undertakes to state the lease, and states it falsely.—There are many authorities which go to prove this distinction. I will mention three, (which are very strong,) where matter, which it was unnecessary to set forth, being stated, and not proved, the variance was held to be fatal. The first is the case of *Cudlip* v.

*Rundle.* There, in an action by a lessor against his tenant, for negligently keeping his fire, by means whereof the house was consumed,—a demise to the defendant for seven years was stated in the declaration; the defendant pleaded, that the plaintiff did not demise modo et forma; and issue being joined, it appeared, on the finding by the jury in a special verdict, to be a lease at will. The court agreed, that the action would have lain against the defendant as tenant at will; but, as the plaintiff had stated him to be a lessee for years, and had proved him tenant at will, the variance was held to be fatal, and there was judgment for the defendant. The next is the case of *Savage, qui tam* v. *Smith,* in the Common Pleas. That was an action of debt against a sheriff's officer, by an informer. The declaration stated a judgment, and a fieri facias upon that judgment.—The fieri facias was given in evidence, but not the judgment, and the court held, that, *though it might be unnecessary to aver the judgment, yet, having been averred, it ought to be proved;* and my Lord Chief Justice de Grey expressly went upon the distinction between *immaterial* and *impertinent averments,* and said, that the *former* must be proved because relative to the point in question. The third case is *Shute* v. *Hornsey* in this court. That was an action for double rent on the statute. The declaration stated a lease for three years; but on the evidence, it appeared, that the lease for three years was void, under the statute of frauds; and that the defendant was only tenant from year to year. This was sufficient for the purpose of the action; but a lease for three years having been laid, and not proved, the plaintiff was nonsuited; and a rule for setting aside the nonsuit having been obtained, it was, upon the argument of the case, discharged. These authorities are in point to the doctrine I have laid down. But perhaps, notwithstanding the weight of the cases, if that

doctrine were highly detrimental, and the setting it right would be attended with no mischief, as it is only a mode of practice, it might deserve consideration. *But I believe it stands right,* and upon the best footing; *for it may prevent the stuffing of declarations with prolix unnecessary matter, because of the danger of failing in the proof;* and it may lead pleaders to confine themselves to state the legal effect." Stephen refers to the penalty visited at the common law upon those guilty of redundancy in pleadings in the following language (p. 366) : "Though traverse cannot be taken (as elsewhere shown) on an immaterial allegation, yet it often happens that when material matter is alleged, with an *unnecessary detail of circumstances, the essential and nonessential parts of the statement are, in their nature, so connected as to be incapable of separation; and the opposite party is therefore entitled to include, under his traverse, the whole matter alleged. The consequence evidently is that the party who has pleaded with such unnecessary particularity has to sustain an increased burden of proof,* and incurs greater danger of failure at the trial." The rigor of the common-law rule requiring the plaintiff to prove immaterial averments of his declaration has been relaxed in the United States. In the case of *Wilson* v. *Codman's Executor,* 3 Cranch (U. S.) 193, the plaintiff in a suit upon a promissory note averred that the assignment to him of the note was for value received. On the trial, however, no proof was had in support of this averment. It was claimed that under the authority of *Bristow* v. *Wright,* a misrecital was fatal. Chief Justice Marshall, the author of the opinion of the court, at page 207 says in that regard: "The second exception requires more consideration. It is, that although the averment that the assignment was made for value received was immaterial, yet the plaintiff, having stated the fact in his declaration,

is bound to prove it.  In support of this position, *Bristow* v. *Wright,* Doug. 665, has been quoted and relied on. The strictness with which, in England, a plaintiff is bound to prove the averments of his declaration, although they may be immaterial, seems to have relaxed from its original rigour.  The reasons stated by Lord Mansfield, in the case reported by Douglas, for adhering to the rule, do not apply to the United States, where costs are not affected by the length of the declaration.  Examining the subject with a view to the great principles of justice, and to those rules which are calculated for the preservation of right and the prevention of injury, no reason is perceived for requiring the proof of a perfectly immaterial averment, unless that averment be descriptive of a written instrument, which, by being untruly described, may, by possibility, mislead the opposite party.  Where, then, the averment in the declaration is of a fact dehors the written contract, which fact is in itself immaterial, it is the opinion of the court that the party making the averment, is not bound to prove it.  In this case, the averment, that the assignment was made for value received, is the averment of a fact, which is perfectly immaterial, and which forms no part of the written assignment; nor is it averred to be a part of it.  It is an extrinsic fact, showing how the right of action was acquired, but which contributes nothing towards giving that right of action. The party making this useless averment ought not to be bound to prove it.  No case which has been cited at bar, comes up to this.  The averments of the declaration, which the plaintiff has been required to prove, are all descriptive of records, or of written contracts; not of a fact, at the same time extrinsic and immaterial.  The court is, therefore, unanimous in the opinion, that this exception cannot be maintained."  In the case of *Ward* v. *Steam Boat Little Red,* 7 Mo. 582, the court said at

page 584: "The rule in England, then, is, to say the least, a harsh rule, and adopted for reasons which have no applicability here.  The rule is still adhered to by the Supreme Court of the United States so far as it applies to averments descriptive of records or written contracts.  But when the averment is of a fact at the same time extrinsic and immaterial, though it may be of a contract, the principle is not held applicable."

Some of the States in the early history of their jurisprudence adhered to the common-law requirement of proof of material but unnecessary allegations and their decisions give rise to the observation by the author of the subject "Pleading" in Cyc that "A distinction has been recognized, however, between allegations which are both unnecessary and irrelevant, and those allegations, which, although unnecessary, are relevant.  Thus it has been held that in a case where defendant's liability may be stated in general terms, if plaintiff alleges such liability, with unnecessary fullness and particularity, he may be forced to prove the allegations as laid."  31 Cyc 676. But an examination of the cases cited in the notes to the text discloses that only *Grubb* v. *Mahoning Nav. Co.*, 14 Pa. 302, 305; *State* v. *Crow*, 11 Ark. 642, 653; *Comm.* v. *Brevard*, 1 Brev. (S. C.) 11, 13; *Lindsay* v. *Davis*, 30 Mo. 406, 412, and *Conn* v. *Gano*, 1 Oh. 483, 13 Am. Dec. 639, support the statement in Cyc and in each instance the court relies upon the rule as enunciated in the *Bristow* case and followed by Chitty but repudiated in the *Wilson* case.  These cases are not only not persuasive but they are contrary to the weight of American authority.  In the *Grubb* case the court did not apply the rule, saying: "It is sometimes difficult to distinguish between what is immaterial and that which is merely impertinent.  Yet, as the modern inclination of courts is not to insist stringently upon rules which are not founded

in some reason or some overruling policy, I think it may be safely assumed that where there is doubt of the character of an averment, it is best to class it with those subject to rejection as surplusage." In the case of *State* v. *Crow* the court cites for its authority the case of *Savage qui tam* v. *Smith,* one of the authorities relied upon in the *Bristow* case. The opinion in *Comm.* v. *Brevard* expressly cites Lord Mansfield as authority for the decision. The *Conn* case, which held that in a suit on a promissory note an averment of demand, though immaterial, must be proved, is not in accord with the decisions in *Billingham* v. *Bryan,* 10 Ia. 317, and *Bean* v. *Simpson,* 16 Me. 49, 51, which hold to the contrary. In the *Lindsay* case the court held that in an action upon a breach of warranty, though the plaintiff proved that the animals warranted were unsound, failure to prove as alleged that they had glanders, was fatal. This is opposed to the holding of the supreme court of New Hampshire in *Fisk* v. *Hicks,* 31 N. H. 535, 540, 541. As said, the decisions in the remaining cases cited in the note to Cyc involved other considerations. In those in which the actions were upon contract the plaintiffs failed by reason of misrecital of the terms of the contract upon which the suit was predicated. For instance: *Dickensheets* v. *Kaufman,* 28 Ind. 251, was an action in indebitatus assumpsit for goods sold and delivered to a partnership. The proof showed the indebtedness to be that of an individual member of the copartnership; in *Dexter* v. *Ohlander,* 7 So. (Ala.) 115, 116, 117, the consideration as alleged was greater than that legally imposed by the contract sued upon; in *Faulkner* v. *Birch,* 120 Ill. App. 281, there are dicta as to the legal effect of a variance between the contract alleged and the contract as proved. The court held the variance was waived. Those sounding in tort failed for different reasons. Neither *Wilkinson* v. *Pensacola, etc., R. Co.,* 17 So.

(Fla.) 71, nor *Gridley* v. *Bloomington*, 68 Ill. 47, involved the question of surplusage. Plaintiffs failed in those cases because of variance between allegata and probata. In the former case the complaint alleged that the injury to the plaintiff resulted from a fireman employed on the defendant's train negligently throwing off a log of wood which hit the plaintiff. The evidence was that as the train passed the plaintiff a log of wood fell from the tender of the train and none of the witnesses could say whether it was thrown off or fell off. In the latter case judgment had been recovered against the city for injuries received by a third party in consequence of defective covering over a sidewalk vault. The city brought a suit against the owner of the adjacent premises for his failure to keep the cover in repair, describing him in its complaint variously as the "owner," "proprietor," "occupier" and "possessor" of the premises. It appeared in evidence that the cover of the vault was broken by a tenant of the defendant and allowed by him to remain in disrepair. The court held that the rule holding the occupant of premises liable for injuries received in consequence of a failure to repair did not apply it appearing that a tenant and not the defendant occupied the premises. Two somewhat similar cases are those of *Lake Shore, etc., Ry. Co.* v. *Beam*, 11 Ill. App. 215, and *West Chicago St. R. Co.* v. *Lups*, 74 Ill. App. 420, both decided on the ground of variance. In the former case the plaintiff alleged as the cause of an injury the blowing of whistles by defendant's agents when about six feet from where his horse was passing. Upon the trial the distance turned out to be greater. In the latter case the complaint alleged injury in connection with a car operated by the defendant's company and the evidence disclosed that it was a trailer. It is fundamental that where specific acts of negligence are alleged, if material to plaintiff's cause of

action, they must be proved as alleged, and a failure of proof, or a variance in proof, is fatal. The cases of *Woodward* v. *O. R. & N. Co.,* 18 Ore. 289; *Santa Fe, etc., Ry. Co.* v. *Hurley,* 4 Ariz. 258; *Georgia R. & B. Co.* v. *Oaks,* 52 Ga. 410; *C. & A. R. R. Co.* v. *Rayburn,* 153 Ill. 290; *Carter* v. *Kansas City, etc., Ry. Co.,* 65 Ia. 287, and *C. B. & Q. R. Co.* v. *Grablin,* 38 Neb. 90, 96, cited by the majority, are merely declaratory of this rule. It is epitomized in 29 Cyc, title "Negligence," at 587. But even there the author of the text qualifies the rule by the statement, "The specific acts of negligence charged must be proved, except such as are immaterial." In the case of *Maltman* v. *Chicago, etc., R. Co.,* 72 Ill. App. 378, 389, another case cited in the note to text cited from 31 Cyc 676, there was a variance in proof in the *locus in quo.* Needless to say this variance is fatal inasmuch as the negligence complained of and the negligence proved might have been two separate and distinct acts of negligence, judgment in one of which would not operate as *res adjudicata* in an action upon the other. The identity of an alleged negligent act is not alone to apprise the defendant of what he is called upon to meet but to enable the parties to avail themselves of the judgment should the same rights and liabilities be again discussed.

The weight of authority is to the effect that where an allegation is unnecessary to the statement of a cause of action, even though it be material, it need not be proved. Cases of contract: *U. S. Bank* v. *Smith,* 11 Wheat. 171, 176. Allegation of demand upon maker of promissory note to bind indorser; no proof of demand. Held: "In the present case, the bank at which the note is made payable, is the holder, and the question arises, whether, in such case, an averment and proof of a formal demand are necessary. If no such proof could be required, the averment would be immaterial, and the want of it could not

Peters, C. J., dissenting.

be taken advantage of upon a writ of error." See also
*Billingham* v. *Bryan, supra; Bean* v. *Simpson, supra.* In
*Geer* v. *Board of Commissioners,* 97 Fed. 435, 442, the
court said: "It is, indeed, sometimes the case that unnec-
essary averments require proof that would not have been
essential if the pleading had been confined to allegations
indispensable to a statement of the cause of action. But
this is true only when immaterial averments constitute an
essential part of the cause of action as it is pleaded. If
the cause is well stated without them,—if their removal
from the complaint would still leave averments sufficient
to constitute a cause of action,—they are mere surplusage,
and may be disregarded. 1 Estee, Pl. (4th Ed.) §191;
Bliss, Code Pl. §215." See also *Board of Commissioners*
v. *Keene Five-Cents Sav. Bank,* 108 Fed. 505, 515, where
the court said: "Unnecessary allegations in a complaint
require proof that would not have been essential if the
pleading had been confined to the indispensable averments
only, when such allegations constitute an essential part
of the statement of the cause of action. If the cause of
action is well stated without them, they may be disre-
garded as surplusage, and they do not affect the issue."
In *Salmon* v. *Salmon,* 69 So. (Ala.) 304 at page 306, the
court said: "The law does not require proof of every aver-
ment in the complaint, but only of the material averments,
the substance of the issue." The court in *Maichen* v.
*Clay,* 17 N. W. (Ia.) 658 at 659, said: "It is claimed
that because it is stated in the petition that the defend-
ants 'wrongfully and wickedly' made representations to
the plaintiff which were not true, that the action is in
tort; that it is to recover for false representations; and
that there can be no recovery without proving the tort;
and complaint is made because the court in its instruc-
tions did not place the plaintiff's right to recover upon
that ground. This was wholly immaterial. A party

plaintiff is never required to prove more of the allegations of his petition than is necessary to entitle him to recover." The court in *Cavanagh* v. *Tyson, etc., Co.*, 116 N. E. (Mass.) 818, said at page 821: "The request to rule in the second action that there was a variance between the allegations and proof was denied rightly. The allegation of overpayment by the plaintiff to the defendant at the time the defendant abandoned the contract, was an allegation of damages resulting from such breach, and as such was an immaterial and surplus allegation not necessary to sustain the action. It therefore need not be proved and should be treated as surplusage. *Little* v. *Blunt,* 16 Pick. 359, 365; *Maxwell* v. *Maxwell,* 31 Me. 184, 187, 50 Am. Dec. 657." See also *Scanlan* v. *Hodges,* 52 Fed. 354, 361. In *De Paola* v. *National Ins. Co.,* 94 Atl. (R. I.) 700, the court at page 704 said: "The defendants' counsel seem to argue that plaintiff did not prove that the defendants denied liability under the policies, and their argument appears to be that, since this was not proved, the case was not proved, and so there must be a judgment for the defendants * * *. But, even if this is not so, the plaintiff claims that this allegation is surplusage and may be rejected, and there would be still left in the declaration sufficient allegations to support the verdict and sufficient proof to support the allegations. We think this is true. It is well settled that surplusage may be disregarded." To similar effect is the language of the court in *Sternheimer* v. *Order of United Commercial Travelers,* 93 S. E. (S. C.) 8, at page 9: "Plaintiff's allegation that insured was in good standing was not necessary to her cause of action. Therefore she was not bound to prove it." The following language of the court in *The Phoenix Mutual Life Ins. Co.* v. *Hinesley,* 75 Ind. 1, at pages 7-8, is worthy of note: "Having given this statement of some of the most substantial averments

of the second paragraph of the complaint, 'showing a waiver of some of the conditions of the contract, or a change in the terms of the contract,' the appellant's counsel say of these averments, in argument, that 'they must be proved, or at least there must be evidence tending to prove them, in order to justify the court below in refusing the instruction under consideration.' In support of their argument, counsel refer us to the rule of law, well and often recognized in the decisions of this court, that a party must recover upon the allegations of his pleadings, *secundum allegata et probata,* or not at all. *McAroy* v. *Wright,* 25 Ind. 22; *Boardman* v. *Griffin,* 52 Ind. 101; *Terry* v. *Shively,* 64 Ind. 106. The soundness of this rule of law can not be questioned; but the appellant's counsel err, as it seems to us, in their application of the rule to the case made by the second paragraph of appellee's complaint. Certainly this rule of law did not require that all of the most substantial averments of the paragraph, as counsel have stated and termed them, must be proved, or that there must have been evidence tending to prove them, in order to justify the trial court's refusal of the instruction under consideration. Under the rule, as we understand it, the appellee was required to prove, or to introduce evidence tending to prove, the substance of the matters in issue; that is, that the terms of the policy in suit had been so far modified, by the conduct and agreement of the parties thereto, as that the annual premium should not become payable until the appellant had given the appellee notice thereof, and of the amount of the payment, after deducting the annual dividend, and that such payment might be made at any time within sixty days after such notice, without any forfeiture of the policy. In *Long* v. *Doxey,* 50 Ind. 385, this court said: 'It is only necessary for a plaintiff to prove so many of the facts alleged by him as amount to or constitute a cause

of action.' In the recent case of *Owen* v. *Phillips,* 73 Ind. 284, on p. 293, Elliott, J., speaking for the court, said: 'The appellants were not bound to prove every allegation of their complaint; it was sufficient if they established the substance of the issue.' " Nor is the rule altered by reason of the immaterial matter appearing in a bill of particulars. "The contract set out in the complaint was established by the plaintiff's evidence to the satisfaction of the jury. The defendant claims that it was amplified by a bill of particulars, which asserts other things in addition to those stated in the complaint as the consideration for the promise to pay the $7,000, and that the plaintiff failed to prove these other things. The plaintiff could recover, however, on proof of the allegations contained in the complaint,—that is, upon proof of the promise made as a consideration for services set forth in the complaint, and actually rendered by her,—notwithstanding in her bill of particulars she may have stated that she agreed to render other services, which were not in fact rendered." *Niemoller* v. *Duncombe,* 69 N. Y. S. 88, 92. Cases of tort: Allegations in excess of necessity of statutory action. *Jones* v. *Sanitary Dist. of Chicago,* 106 N. E. (Ill.) 473; *Dunham* v. *Black Diamond Coal Co:,* 88 N. E. (Ill.) 216. Allegations by injured passenger that carrier was guilty of negligence. *Way* v. *Chicago, R. I. & P. Ry. Co.,* 35 N. W. (Ia.) 525, 527; *Lampe* v. *United Rys. Co. of St. Louis,* 232 S. W. (Mo.) 249, 253; *Hoskins* v. *Northern Pac. Ry. Co.,* 102 Pac. (Mont.) 988. Allegations anticipating charges of contributory negligence. *Southard* v. *Dudley,* 199 S. W. (Mo.) 593. Unnecessary allegations in actions of trespass are surplusage and need not be proved. *Maxwell* v. *Maxwell,* 31 Me. 184, 187; *Neal* v. *Smith,* 36 Atl. (Me.) 1058, 1059. In actions for false imprisonment, where fraud alleged, need not be proved. *Collins* v. *Chipman,* 95 S. W. (Tex. App.) 666;

*Snyder* v. *Parmalee,* 68 Atl. (Vt.) 649, 650. Where allegations divisible without destroying their identity, redundancy may be rejected as surplusage. *Hutchinson* v. *Granger,* 13 Vt. 386, 393; *Morris* v. *Chicago Union Traction Co.,* 119 Ill. App. 527; *L. E. & W. R. R. Co.* v. *Christison,* 39 Ill. App. 495, 497. Where proof of part of facts alleged will support a recovery a failure of proof of the remainder is immaterial. *Marquet* v. *La Duke,* 55 N. W. (Mich.) 1006; *Henry Hall Sons Co.* v. *Sundstrom & Stratton Co.,* 123 N. Y. S. 390, 392; *Baxter* v. *Chicago, R. I. & P. Ry. Co.,* 54 N. W. (Ia.) 350, 351. All that plaintiff need prove is sufficient to sustain the action. *Bailey* v. *Gatewood,* 74 Pac. (Kans.) 1117; *Wessel* v. *Lavender,* 171 S. W. (Mo.) 331, 334; *Selman* v. *Gulf, C. & S. F. Ry. Co.,* 101 S. W. (Tex. App.) 1030, 1033. If averment may be stricken and cause of action remain it may be rejected as surplusage. *Bell* v. *Lakin,* 1 McMul. (S. C.) 364.

Early in the history of this court the disinclination to follow the common-law rule was emphasized in the case of *Dowsett* v. *Brown,* 3 Haw. 815. There was a motion in arrest of judgment upon the ground that the complaint claimed damages by reason of wrong and injury done the plaintiff and it also claimed by reason of a promise to pay. The court at page 817 held: "The court would be reluctant in any case where a plain issue had been tried on its merits to set aside the verdict or arrest the judgment on a purely technical ground. Courts of justice are open for the settlement, in the most simple, direct and common sense method, which is consistent with regular proceedings, of such controverted affairs as individuals find themselves unable to adjust without their aid. They are intended to facilitate business, not to obstruct it. The tendency of modern law is to abandon technical niceties in pleading, and to seek the substantial points of the

controversy. We fail to find any material defect in the declaration before us. It is true there are expressions in it which are not necessary, such as the averment of damages resulting by reason of injury and wrong, which belongs rather to tort than assumpsit, but this redundancy results from following the statute form which is given at once for the greatest variety of cases.. *The presence of unnecessary expressions does not vitiate if there be also sufficient to lay the proper action which is intended to be brought."*

(c) The evidence is sufficient to sustain a finding that the assured received bodily injury solely through external, violent and accidental means and that his death resulted directly from said accident independently and exclusively of all other causes.

The statement of facts contained in the majority opinion obviates the necessity of repetition here. Its sufficiency to sustain the judgment must be considered from the standpoint of a demurrer to the evidence. "The general doctrine on a demurrer to evidence has been correctly stated at the bar. The party demurring admits the truth of the testimony to which he demurs, and also those conclusions of fact which a jury may fairly draw from that testimony. Forced and violent inferences he does not admit; but the testimony is to be taken most strongly against him, and such conclusions as a jury might justifiably draw the court ought to draw." *Pawling* v. *United States,* 4 Cranch (U. S.) *219, *221, *222. It must be considered as admitted that on the evening of his return from Honolulu the assured exhibited black and blue marks, bruises and contusions in and about the right side of his chest and the corresponding areas of his back and on his right arm and right leg. Ordinarily black and blue marks indicate external violence. In the absence of evidence indicating how these injuries were occasioned

we cannot presume that they were self-inflicted. The presumption is to the contrary. (*Travellers' Insurance Co.* v. *McConkey*, 127 U. S. 661.) Nor can we presume that such injuries were the natural and probable consequence of an unlawful act committed by the assured. (*Cronkhite* v. *Travelers' Insurance Co.*, 43 N. W. (Wis.) 731, 732.) Moreover, recent marks of violence are evidence of accident. (*Wilkinson* v. *Aetna Life Ins. Co.*, 88 N. E. (Ill.) 550; *Kephart* v. *Continental Casualty Co.*, 116 N. W. (N. D.) 349; *Beard* v. *Indemnity Ins. Co.*, 64 S. E. (W. Va.) 119, 121.) Recent marks of violence being evidence of external and violent means and the presumption being that the injuries, the result thereof, were not self-inflicted nor that they were the natural and probable consequences of the commission by the assured of an unlawful act, such evidence and the presumption flowing therefrom are sufficient to sustain a finding that bodily injury was effected solely through external, violent and accidental means. "Where * * * it is apparent that the injury to or death of the insured was the result of external and violent means, and the issue is as to whether it was due to an accident, within the meaning of the policy, or to some cause excepted by the policy, the presumption is in favor of accident * * *." 1 C. J., title "Accident Insurance," §278, p. 495. It further must be considered as admitted that the assured died from pneumonia. The evidence was sufficient to sustain a finding that the pneumonia, which was the immediate cause of the death of the assured, was itself caused by the means which produced the bodily injury. The jury by its verdict found that the death of the assured resulted directly, independently and exclusively of all other causes from bodily injury solely through external, violent and accidental means. "If the death was caused by a disease, without any bodily injury inflicted by external, violent and acci-

dental means * * * the association was free from liability by the express terms of the certificate. If the deceased suffered an accident, but at the time he sustained it he was already suffering from a disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected by the disease or infirmity, but he died because the accident aggravated the disease, or the disease aggravated the effects of the accident, as in the case of the insured who was subject to such a bodily infirmity that a short run, followed by stooping, which would not have injured a healthy man, produced apoplexy * * * the association was exempt from liability, because the death was caused partly by disease and partly by accident. If the death was caused by bodily injuries effected by external, violent and accidental means alone, the association was liable to pay the promised indemnity. If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the causa causans, to the accident alone" (citing cases). *Western Commercial Travelers' Ass'n* v. *Smith,* 85 Fed. 401, 404.

There can be no question but that, had the plaintiff at the trial upon the conclusion of her case moved the amendment of her complaint to conform to the proof by striking out all reference to the overturning of the automobile, the motion would have been granted. Upon the most technical of technicalities the judgment has been

reversed.   The effect of the conclusion of the majority is a repetition in the trial court upon an amended complaint of what has already occurred upon the former trial. Under the circumstances it would seem proper for this court of its own motion to order the complaint amended to conform to the proof by striking out all reference to the overturning of an automobile, to affirm the judgment and dismiss this writ of error.   The jury on the same evidence that will be adduced upon a new trial has declared that the plaintiff is entitled to recover.   Upon the former trial the defendant had full and ample opportunity of presenting its evidence.   It made no motion for a nonsuit.   It expressed no surprise upon being confronted with an accident, the circumstances of which the plaintiff was unable to prove.   It apparently was satisfied that the accident was the result of the overturning of an automobile.   Our statute of amendments is extremely liberal.   To amend the complaint to conform to the proof and to sustain the judgment to my mind is more consonant with justice than the reversal of the judgment and the needless retrial of the issues that have already been passed upon by a jury.

Careful scrutiny of all the assignments of error leads me to the conviction that no prejudicial error was committed by the trial judge and that the judgment should be sustained.